**UNITED STATES of America,
Appellee,**

v.

**Jerry Neale ALBRIGHT, Appellant.**

**No. 11222.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1967.

Decided Jan. 4, 1968.

Chester Lovett, Charleston, W. Va. (Court-appointed counsel), for appellant.

W. Warren Upton, Asst. U. S. Atty. (Milton J. Ferguson, U. S. Atty., and Charles M. Love, III, Asst. U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Whether the defendant's right not to be compelled to incriminate himself was violated by requiring him to submit to a psychiatric examination, the results of which were used to overcome his defense of insanity is the principal question presented to us in this appeal. Defendant was found guilty of multiple charges of forging and uttering forged United States postal money orders, with intent to defraud, notwithstanding his defense of insanity. We affirm the judgment entered on his conviction.

On the day that defendant's trial began, his counsel disclosed that defendant would interpose insanity as a defense. Admittedly, no question of sanity had been previously raised, and this disclosure came as a surprise to government counsel.[1] The government presented its case against the defendant; and when its efforts to preclude the defendant from presenting psychiatric testimony to support his defense were unsuccessful, it sought and obtained, over defendant's objection, a recess of the trial [2] and an order to require him to submit to a psychiatric examination. The trial was in recess for twenty-three days. When it resumed defendant presented the testimony of Dr. Thelma Owen, a qualified psychiatrist, and the government presented as a rebuttal witness the testimony of Dr. William B. Rossman, also a qualified psychiatrist, whose testimony controverted that of Dr. Owen.[3]

Three contentions are pressed by defendant arising out of these facts. First, it is asserted that defendant's Fifth Amendment right against self-incrimination was violated when he was required, over his objection, to submit to an examination by Dr. Rossman. Next, it is claimed that defendant's right to counsel was abridged because defendant's counsel was not permitted to be present during the course of the examination. Third, defendant claims that he was deprived of his right to a speedy trial by reason of the twenty-three day recess of the trial to permit the psychiatric examination to be made.

A fourth claim of error, also advanced, relates to events prior to the beginning of the trial. At the time of defendant's arrest, a United States postal inspector obtained handwriting samples from defendant which were introduced in evidence for the government at trial. No evidence was adduced at trial that defendant was told of his right to counsel or that the samples could be used against him at trial. Thus, defendant contends that his privilege against self-incrimination and his right to counsel were violated in this regard.

---

1. Some four days prior to the day on which the trial was scheduled to begin, defense counsel did advise government counsel that he was considering a motion for a psychiatric examination, but the conversation concluded with defense counsel's saying that he would not make the motion.

2. Defendant's trial was before the court and a jury. On recess, the jury was appropriately instructed not to discuss the case among themselves or with any outsider. The jury was also instructed to preserve an open mind concerning defendant's guilt or innocence until the trial resumed and to try to retain in mind the evidence it had heard.

3. Dr. Owen was present and prepared to testify before the recess began. Presentation of her testimony was deferred upon the representation of government counsel that he could not cross-examine her until the government had the benefit of another examination or expert advice from another psychiatrist.

## I

■ Authority for a district court to inquire into a defendant's mental condition is contained in 18 U.S.C.A. § 4244, the text of which is set forth in the margin.[4] It is true, however, that § 4244, by its terms, has application only if there is reasonable cause to believe that a defendant is presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense. It thus has no literal application to a case where a defendant pleads temporary insanity, that is, that he was insane at the time of commission of the alleged offense but sane at the time of trial, except where the claim of previous insanity may provide reasonable cause to believe present insanity.

■ On the facts of the case at bar, the psychiatric examination of the defendant at the instance of the government did not occur until after defense counsel disclosed in chambers that Dr. Owen was ready and waiting to be called to testify as to defendant's sanity. At that time, there was no specification as to whether the claim of insanity was limited to the dates of the alleged offenses or whether it continued to the time of trial; but since the colloquy at which the disclosure was made occurred approximately eleven months after the date of the alleged offenses, the district judge could properly treat the disclosure as one providing reasonable cause to believe present insanity.[5] There was, thus, reasonable cause to believe that defendant was presently insane at the time the government obtained the order requiring the examination, within the literal application of § 4244.

■ Even if resort to § 4244 might not have properly been had, the principle seems established that a district court in a criminal case has inherent power to require a psychiatric examination of a defendant, where the defendant has pleaded insanity as a defense, submitted to examination by examiners of his own choosing and presented testimony to support his defense. Alexander v. United States, 380 F.2d 33 (8 Cir. 1967); Pope

4. "18 U.S.C.A. § 4244. Mental incompetency after arrest and before trial

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

5. When she, Dr. Owen, did testify after the trial was resumed, it is significant that she expressed no opinion that defendant's mental condition was any different at the time of trial from what it was at the time of the claimed offenses.

v. United States, 372 F.2d 710, 719 (8 Cir. 1967); Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959). Among the authorities, both state and federal, only State v. Olson, 274 Minn. 225, 143 N.W.2d 69 (1966), holds that, absent an enabling statute having specific application, a court lacks inherent power to require a defendant to submit to a psychiatric examination.

■■ In the *Olson* case, the result was reached because of the Court's concern over the danger of self-incrimination to a defendant who is required to submit to an examination and because of a feeling that protective procedures could only be supplied by carefully drafted legislation. We find the *Olson* case unpersuasive, because, as we shall shortly explain, the problem of potential self-incrimination is not of such magnitude as to be insurmountable, and there are even weightier reasons why expert medical opinion should be sought when the mental condition of a defendant is brought into issue. Sanity, as defined by law, under many authorities can be determined by lay opinion. But with the advance of medical science in general, and the study and knowledge of mental illness in particular, we would unduly limit the ability of a court to find the truth in a criminal case where sanity is an issue were we to turn our backs on the tool of expert medical knowledge. Rather, the use of expert medical opinion is to be encouraged. Alexander v. United States, supra, 380 F.2d at p. 39; Pope v. United States, supra, 372 F.2d at pp. 720–721; State v. Whitlow, 45 N.J. 3, 210 A.2d 763 (1965). We hold, therefore, that the district court had ample authority to order defendant to submit to a psychiatric examination. We turn next to a consideration of whether such an examination violated his Fifth Amendment rights.

■ Explicit in Pope v. United States, supra, and implicit in Winn v. United States, supra, is the ruling that a defendant's right not to incriminate himself is not violated *per se* by requiring him, in an appropriate case, to submit to a mental examination. We adopt the rule in this ,circuit on the authority of those cases and the following considerations:

The manifest purpose of the examination in this case was, and the proper objective of a mental examination in any criminal case where a defendant's sanity is in issue should be, to obtain knowledge not about facts concerning defendant's participation in the criminal acts charged, but about facts concerning a defendant which are themselves material to the case.[6] Cf. United States v. Wade, 388 U.S. 218, 219, 222, 87 S.Ct.1926, 18 L.Ed.2d 1149 (1967). The purpose is not to prove by evidence wrested from a defendant whether he is guilty as charged but, rather, to prove whether a defendant possesses the requisite mentality to be guilty as charged, assuming that his guilt is otherwise established, or whether, legally, he cannot be held criminally responsible, irrespective of what other proof may establish he has done. The "testimonial" or "communicative" test of what is and what is not within the privilege against self-incrimination, invoked in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is not an appropriate distinction to be applied in the case at bar, but that test is not absolute because, as stated in *Schmerber,* it is only "a helpful framework for analysis," and "[T]here will be many cases in which such a distinction is not readily drawn." 384 U.S. 764, 86 S. Ct. 1832.

---

6. Indeed, in this case, at a conference in chambers, *inter alia*, about the government's request for an examination, counsel for defendant candidly admitted that defendant would take the position that he did the criminal acts charged but that he should not be held liable for them. When the trial was resumed and immediately prior to Dr. Owen's testimony, the district judge, with the consent of all counsel, advised the jury that defendant "does not deny having done the acts or having committed the acts which are charged as offenses in the five counts of the indictment, but he contends that he is not guilty in law and should not be held accountable in law by reason of his mental incapacity or insanity."

In Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892), the principle was stated that the privilege against self-incrimination "is as broad as the mischief against which it seeks to guard." The underlying purposes of this Fifth Amendment protection have been recently restated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in the portion of the Court's opinion set forth in the margin.[7] We are of the view that those purposes were served and not defeated by requiring the examination in this case.

The maintenance of a "fair state-individual balance" clearly required that the government be permitted to have defendant examined. Once defendant offered some evidence that he was not sane, the burden of proving legal sanity was on the government. Hall v. United States, 295 F.2d 26 (4 Cir. 1961). Where a defendant is indigent and claims reason to doubt his sanity, the government stands ready to supply him with the services of psychiatric experts necessary to his defense. 18 U.S.C.A. § 3006A(e).[8] Under these circumstances, the comment in Pope v. United States, supra, 372 F.2d p. 720, is well-taken:

"It would be a strange situation, indeed, if first, the government is to be compelled to afford the defense ample psychiatric service and evidence at government expense, and, second, if the government is to have the burden of proof, as it does with the competency issue in this case * * * and yet it is to be denied the opportunity to have its own corresponding and verifying examination, a step which perhaps is the most trustworthy means of attempting to meet that burden." See also, Alexander v. United States, supra, 380 F.2d at p. 39.

It follows, also, that if the government is required "to shoulder the entire load," it cannot be denied access to the only reliable means of ascertaining the truth concerning a defendant's sanity.

Not only to enable the government to carry its full load, but also to respect the inviolability of the human personality, the examination here was indicated. Should defendant's claim of self-in-

---

7. "* * * the privilege against self-incrimination—the essential mainstay of our adversary system—is founded on a complex of values, Murphy v. Waterfront Comm., 378 U.S. 52, 55–57, n. 5, 84 S.Ct. 1594, 1596–1597, 12 L.Ed.2d 678 (1964); Tehan v. [United States ex rel.] Shott, 382 U.S. 406, 414–415, n. 12, 86 S.Ct. 459, 464, 15 L.Ed.2d 453 (1966). All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' 8 Wigmore, Evidence 317 (McNaughton rev. 1961), to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. Chambers v. [State of] Florida, 309 U.S. 227, 235–238, 60 S.Ct. 472, 476–477, 84 L.Ed. 716, 722 (1940). In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964)." 384 U.S. 460, 86 S.Ct. 1620.

8. Although defendant obtained an order pursuant to 18 U.S.C.A. § 3006A(e) permitting him to employ fingerprint and handwriting experts at government expense, defendant obtained the services of Dr. Owen without first obtaining such an order. Certain statements of his counsel suggest that defendant will seek reimbursement under the statute.

But our decision is not predicated on defendant's indigency. If a defendant is indigent and avails himself of government aid to support his defense of insanity, that fact merely makes the government's right to have him examined more critical in the maintenance of a "fair state-individual balance," but the government's right to the examination stems from the burden of proof cast upon it and the desirability that the issue be determined on the most reliable evidence available.

crimination be upheld, the government, to meet its burden of proof, would have access to only three kinds of proof: cross-examination of defendant's experts, lay testimony, and testimony of government experts predicated upon courtroom observations and hypothetical questions. Medical science, as Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964), eloquently recognizes, deems these poor and unsatisfactory substitutes for testimony based upon prolonged and intimate interviews between the psychiatrist and the defendant. Half truths derived from these unsatisfactory substitutes do more to violate human personality than full disclosure, especially because there is always the possibility that the psychiatrist who examines for the government and thus has full knowledge of a defendant, may corroborate his contention that he is legally insane.

█ Lastly, we comment that the purpose and result of the examination is not "the cruel, simple expedient of compelling it [incriminating evidence] from his own mouth." To repeat an earlier statement, the purpose of the examination is not to determine whether a defendant did or did not do the criminal acts charged, but whether he possessed the requisite mental capacity to be criminally responsible therefor, if other proof establishes that he did do them. So limited, we find nothing in the examination, over a defendant's objection, to violate a defendant's privilege against self-incrimination.

█ When an examination is conducted pursuant to 18 U.S.C.A. § 4244, the statute is quite specific that no statement made by the accused in the course of examination shall be admitted in evidence on the issue of guilt in any criminal proceeding. This is due recognition that infringement of the privilege may result if the disclosure made by a defendant in the course of examination touching upon his guilt are used against him. Even if an examination is required, not under 18 U.S.C.A. § 4244, but under a court's inherent power to require an examination,

the same recognition should be given to the privilege.

█ In this case, the privilege was not violated by the testimony of Dr. Rossman. First, the facts concerning the alleged violation should be stated. Upon resumption of the trial, after the recess to permit the examination to be made, the district judge, by agreement of counsel, told the jury that defendant no longer denied committing the acts charged in the indictment, but claimed that he could not be liable therefor because of insanity. The testimony of Dr. Owen, defendant's psychiatrist and sole witness, then began. After testifying about her qualifications, she was asked if she had examined defendant and what history she had obtained from him. Her response encompassed disclosure that defendant had signed the money orders and collected money, as he had been charged, that he knew the money orders were stolen and that there were other charges against him. She further stated that defendant's first attempt at robbery occurred when he was twelve, that much of his life had been spent in prison, and that he made no attempt to deny the charges against him. To the direct questions by defendant's counsel concerning defendant's mental condition, "at the time that he committed these acts of forgery," Dr. Owen expressed the opinion that defendant suffered a sociopathic condition and lacked mental capacity to conform his conduct to the requirements of law. On cross-examination, no objection was interposed to a question as to whether "on the day he forged these documents" defendant gave consideration to what he was doing; nor was there objection to questions as to where defendant said that he obtained and disposed of the money orders or about his past criminal record.

It thus appears that defendant agreed to the court's statement that he no longer contested doing the acts charged against him and that defendant voluntarily presented evidence of his admissions of guilt and his previous criminal record. These matters were fully disclosed by the direct examination of Dr. Owen by defendant's

counsel and no objection was lodged to further amplification on cross-examination. As a consequence, the testimony of Dr. Rossman of disclosures made by defendant to him of how defendant committed the crimes with which he was charged and that he had a history of infractions of the law was rendered harmless, although such interrogation would have violated defendant's privilege against self-incrimination had defendant not first admitted his guilt (except for sanity) and presented such evidence. Indeed, in defendant's counsel cross-examination of Dr. Rossman, the doctor was asked about defendant's state of mind "at the time Mr. Albright committed these acts of forgery * * * [he acted as] the result of a sociopathic personality," to which Dr. Rossman replied, " * * * he has been a sociopath for many years, as I would assume then * * * that when he committed these acts he was acting in a sociopathic way." We find, therefore, no reversible error.[9]

## II

State v. Whitlow, supra, holds that a defendant has no federal or state constitutional right to have his attorney present during a psychiatric examination conducted at the instance of the prosecutor. In this conclusion we agree. From the intimate and personal nature of the examination, we are satisfied that, except in the unusual case, the presence of a third party, in a legal and non-medical capacity, would severely limit the efficacy of the examination, and that if defendant's privilege against self-incrimination is given full effect with regard to his inculpatory statements to his examiner, the need for the presence of an attorney is obviated.[10] We find no error

9. In State v. Whitlow, 45 N.J. 3, 210 A.2d 763 (1965), the problem of a psychiatrist's repeating in his testimony defendant's inculpatory statements to him is fully considered. The conclusion reached was:

"If, in the opinion of the examiner, it is necessary for the formulation of an opinion as to sanity to discuss the circumstances of the alleged crime, defendant should cooperate in good faith. * * * [A]ny inculpatory statements made by defendant in this context are not competent as admissions on the issue of guilt, and when introduced at the trial during the course of the doctor's testimony, the jury must be told so immediately, explicitly and unqualifiedly." 210 A.2d 772.

In this case we have no occasion to consider the efficacy of a limiting instruction because we treat the privilege as waived by the defendant's own disclosures. We are fully aware, however, of the necessity of a psychiatrist's repeating his patients' inculpatory statements in many cases. Where, as in the case at bar, the problem was whether mental capacity was lacking because of a sociopathic personality, we recognize that a complete psychiatric examination necessarily involves a discussion between physician and patient of the patient's participation, if any, in the acts charged and his past criminal conduct, if any. Adequate disclosure of the basis for medical opinion to the trier of fact would, in turn, almost invariably require dis-

closure of what the patient said about these matters, including any admissions which the patient may have made. In other types of cases, it may be possible for a psychiatrist to avoid these sensitive areas, in examination or in testimony, and still be able to reach a satisfactory and certain opinion. But if resort to medical opinion is to be had, and, indeed, it is to be encouraged, the law would lack common sense if it diminished the usefulness of medical opinion by erecting obstructions to its completeness and certainty. How best to accommodate a defendant's privilege against self-incrimination to meaningful medical opinion and testimony in particular cases will be met by us in the context of the facts of those cases as they arise.

10. In Timmons v. Peyton, 240 F.Supp. 749 (E.D.Va.1965), a district court of this circuit had occasion to say: "State mental institutions to which persons accused of crime are frequently sent for the purpose of determining mental competency, both at the time of trial and as of the date of the alleged offense, cannot be thwarted in their efforts to accomplish the purpose of intelligent examinations by the presence of attorneys." Id., p. 753. While we reversed the decision on other grounds, 360 F.2d 327 (4 Cir. 1966), we were careful to state: "We do not hold that an accused is entitled to have a lawyer present when he is undergoing psychiatric tests to determine his competency to stand trial on his sanity." Id., p. 330.

in the failure to permit defendant's counsel to be present during his examination by Dr. Rossman.[11]

### III

We perceive no violation of defendant's right to a speedy trial. Under the facts as we have stated them, defendant introduced the question of his sanity into the proceedings at a time when the only course available to afford the government, in carrying out society's right to the truth, the opportunity to have another examination of defendant was to recess the trial. The jury was properly instructed before the recess began; and the duration of the recess, for the purpose at hand, seems to us unexceptional. In this regard, the case is like Pope v. United States, supra, where the trial was recessed for the Thanksgiving week-end, except for the length of the recess. This, however, is a distinction without a difference.

### IV

Defendant's constitutional right to counsel and his privilege against self-incrimination were not violated by the obtention of handwriting exemplars out of the presence of counsel and without advice as to his rights. This follows from the square holding in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), that the taking of handwriting exemplars does not violate the Fifth Amendment privilege against self-incrimination, and that the taking of the exemplars is not a "critical" stage of criminal proceedings, so that the Sixth Amendment right to counsel is inapplicable. See also, United States v. Wade, supra; Schmerber v. State of California, supra, 384 U.S. at pp. 763–764, 86 S.Ct. 1826.

Affirmed.

11. State v. Whitlow, supra, does suggest that the presence of a defendant's counsel or a defendant's psychiatrist at the defendant's examination by the court's or the prosecutor's psychiatrist, or the use of recording devices to record the examination for the use of those not present, is a matter largely within the discretion of the trial court. Thus, if the examining psychiatrist raises no objection, the attorney can be present and, if the defendant demands it, his psychiatrist must be present. Again, we have no occasion to consider these matters on this record.