The STATE of North Dakota ex rel. Lewis C. JORGENSON, State's Attorney, Ramsey County, North Dakota, Petitioner,

v.

The DISTRICT COURT OF WALSH COUNTY, North Dakota; the Honorable James H. O'Keefe, District Judge; and Earl K. Pederson, Respondents.

Cr. No. 711.

Supreme Court of North Dakota.

Feb. 14, 1980.

Lewis C. Jorgenson, State's Atty., Devils Lake, for petitioner.

Murray, Olson, Larivee & Bohlman, Grand Forks, for Earl K. Pederson; argued by Alan J. Larivee, Grand Forks.

Allen I. Olson, Atty. Gen., Bismarck, amicus curiae; Gail H. Hagerty, Asst. Atty. Gen., Bismarck, on brief.

PEDERSON, Acting Chief Justice.

Lewis Jorgenson, State's Attorney for Ramsey County, petitions this court for a Writ of Superintending Control over the District Court of Walsh County. This petition is made to require District Judge O'Keefe to grant Jorgenson's motions to compel a psychiatric examination of the defendant in a pending criminal action, and to continue the trial date until such examination can be completed. We hold that this is a proper case for this court to exercise its superintending jurisdiction. We grant the relief requested.

The defendant, Earl K. Pederson,[1] was arraigned on a charge of arson on November 30, 1979, before District Judge O'Keefe. On January 4, 1980, counsel gave the State notice that the defendant "intends to rely upon the defense of insanity at the time of the alleged crime and intends to introduce expert testimony relating to the issue of whether he had the mental state required for the offense charged," pursuant to Rule 12.2(a & b), North Dakota Rules of Criminal Procedure.

The State filed a motion to compel the defendant to submit to a psychiatric examination pursuant to Rule 12.2(c), NDRCrimP, and a motion to continue the trial date until such examination could be completed. The district judge denied these motions and set the trial for January 29, 1980. We ordered the trial stayed pending our determination of the issues raised by the petition.

The State contends that there is no way it can counter testimony that may be presented by the defendant relative to lack of criminal responsibility by reason of mental defect if the district court's order denying the psychiatric examination is allowed to stand. The State also submits that without a supervisory writ from this court it will be prejudiced by the district court order because there is no other adequate remedy. It is the State's contention that if the trial is permitted to proceed and the jury finds the defendant not guilty by reason of lack of mental capacity, an appeal by the State will be meaningless because of double jeopardy. Both of these arguments appear persuasive.

Section 27–02–04, NDCC, provides that the Supreme Court "in the exercise of its appellate jurisdiction, *and in its superintending control over inferior courts,* . . . may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction." [Emphasis added.] The power of this court to issue supervisory writs is discretionary and is used to prevent injustice in cases where there is no appeal, or where the remedy by appeal is inadequate. The petitioner must show that the action by the district court has resulted in a grave or serious prejudice to him for which he has no adequate remedy. *Olson v. North Dakota Dist. Court, Etc.,* 271 N.W.2d 574 (N.D.1978).

Section 29–28–07, NDCC, which provides the authority for the State to appeal certain orders to the Supreme Court, does not authorize an appeal by the State from the order involved in this case. The rule which authorizes appellate review of unappealable orders where there is an appeal from the judgment, has no application to appeals by the State in criminal cases. See § 29–28–27, NDCC. The appeal remedy is entirely inadequate in this instance. A finding by the jury that the defendant is not guilty is final. See § 29–28–12, NDCC. An appeal by the State, if allowed at all, only permits this court to point out errors. See § 29–28–35, NDCC.

---

1. Defendant Pederson and Justice Pederson are not related.

We must determine, first of all, if the decision of the district court was erroneous and, if so, if it gravely or seriously prejudices the State of North Dakota.

■ Defense counsel alleges that Rule 12.2(c) is not applicable here because it did not go into effect until after the date set for all pretrial motions (Dec. 20, 1979). Rule 12.2(c) became effective January 1, 1980, and defense counsel gave notice on January 4, 1980, of his intent to rely on the defense of insanity. Under these circumstances, it was proper that the State refer to Rule 12.2(c) in its motion for an order requiring that defendant submit to a psychiatric examination. The motion and order requiring the examination could have been made pursuant to § 12.1–04–06, NDCC, which has not been superseded by Rule 12.2(c). It is not material whether the notice of intent to rely on the defense of lack of mental capacity due to disease or defect (insanity) was given pursuant to the requirement of Rule 12.2(b) or § 12.1–04–05. A court order requiring that a defendant submit to a psychiatric examination is authorized whenever mental capacity becomes an issue.

■ Defense counsel, in oral argument before this court, states that the defense he intends to raise is actually one of "diminished capacity," and that Rule 12.2 does not apply. He supplies us with no definition of what "diminished capacity" means. If he means that his defense is one of intoxication (see § 12.1–04–02, NDCC), or one of age (see § 12.1–04–01, NDCC), or something else other than mental state, neither Rule 12.2 nor § 12.1–04–06 would apply, and perhaps he need not have given the notice. However, if he means that the defendant is not responsible for his conduct because, as the result of mental disease or defect, (1) he lacked substantial capacity to comprehend the harmful nature or consequences of his conduct, or (2) his conduct was the result of a loss or serious distortion of his capacity to recognize reality, both Rule 12.2 and the appropriate provisions of Chapter 12.1–04, NDCC, apply. See § 12.1–04–03, as amended by Chapter 121, § 1, S.L.1977.

■ It is not significant that he labels the defense he intends to raise at the trial "diminished capacity." It is the defendant's mental state that was raised in the pretrial proceedings; therefore Rule 12.2, as it exists today, applies. Rule 12.2, NDRCrimP, provides in relevant part:

(a) "If a defendant intends to rely upon the defense of lack of criminal responsibility by reason of mental disease or defect at the time of the alleged crime, he shall . . . notify the prosecuting attorney of such intention in open court or in writing and file such notice. . . ."

(b) "If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall . . . notify the prosecuting attorney of such intention and file such notice. . . ."

(c) "Psychiatric Examination. In an appropriate case the court may, upon motion of the prosecuting attorney, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. . . ."

■ There is a distinction between subparagraphs (a) and (b). Subparagraph (a) deals with the defense of lack of capacity. Subparagraph (b) deals with expert testimony concerning the mental state requirement. Thus, even if the defendant is not relying on a defense of lack of responsibility, if he is going to use expert testimony as to the mental state, notice is required to be given.

Rule 12.2 is modeled after the Federal Rule 12.2. Even before this rule was applicable to proceedings in the federal courts, the Fourth Circuit had ruled that a defendant could be compelled to submit to a psychiatric examination upon request of the prosecution when a defense of lack of criminal responsibility by reason of mental defect was raised. *United States v. Albright*, 388 F.2d 719, 724 (4th Cir. 1968). In *Albright*, the court stated:

"The maintenance of a 'fair state-individual balance' clearly required that the government be permitted to have defendant examined. . . .

" 'It would be a strange situation, indeed, if first, the government is to be compelled to afford the defense ample psychiatric service and evidence at government expense, and, second, if the government is to have the burden of proof, as it does with the competency issue in this case * * * and yet it is to be denied the opportunity to have its own corresponding and verifying examination, a step which perhaps is the most trustworthy means of attempting to meet that burden.' [Citation omitted.]

"It follows, also, that if the government is required 'to shoulder the entire load,' it cannot be denied access to the only reliable means of ascertaining the truth concerning a defendant's sanity." 388 F.2d at 724.

In *Proffitt v. United States*, 582 F.2d 854 (4th Cir. 1978), the court said that the government's right to the examination stems from the burden of proof cast upon it and the desire that the issue be determined on the most reliable evidence available.

The Fifth Circuit has held that empowering the court to order a psychiatric examination concerning a defense of lack of criminal responsibility by reason of mental defect does not violate per se the defendant's rights under the Fifth Amendment. See *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130; *United States v. Leonard*, 609 F.2d 1163 (5th Cir. 1980). The holding in *Cohen, supra*, rested on the premise that if a defense of lack of criminal responsibility is raised, "the government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selects . . . who has had the opportunity to form a reliable opinion by examining the accused." 530 F.2d at 48.

The defendant in *United States v. Steinberg*, 428 F.Supp. 77, 78 (U.S.D.C.Conn. 1977), opposed the government's motion for a psychiatric examination on the ground that Rule 12.2(c) authorizes the court in an "appropriate" case to order the examination, and that the government had not made a showing this was an "appropriate" case. The court interpreted the rule as follows:

"Since ¶(a) of Rule 12.2 obliges the defendant to give notice of an insanity defense 'within the time provided for the filing of pretrial motions,' a reasonable construction is that any case in which such notice is given is 'appropriate' for an examination pursuant to ¶(c). The Advisory Committee's Notes support this view: 'The objective [of the notice requirement] is to give the government time to meet the issue, which will usually require reliance upon expert testimony.'

" . . . Once notice of the insanity defense has been given, there is no reason to infuse the word 'appropriate' with any special meaning that would require a particularized showing of need."

We agree with the above interpretation. Compliance with Rule 12.2(a & b), NDRCrimP, requiring prior notice, avoids situations such as in *Albright, supra*, where the trial had to be recessed for 23 days in order to permit a psychiatric examination. Once this notice is given, as was done in this case, and the State moves for a psychiatric examination, pursuant to Rule 12.2(c), the order should be granted without a particularized showing of need.

Nevertheless, the decision to order the defendant to submit to a psychiatric examination rests with the judge, since the rule is directory, not mandatory. We do not hold that a denial of the State's motion in such cases is per se an abuse of discretion. We do hold that when the notice is given by the defense and the responsive motion is made by the State, the judge must justify his refusal with particularly stated reasons. In this case it appears that the judge's denial was solely based on not delaying the trial. While a speedy trial is important to all of the parties, a fair trial is more important. Fairness in this case includes adequate preparation when a specialized defense or specialized evidence questions arise. Here, it was an abuse of discretion to deny the State's motion.

The order of the district court denying the State's motion to compel the defendant to submit to a psychiatric examination and to continue the trial date until such examination can be completed is set aside.

The defendant is hereby directed to submit to a psychiatric examination by a psychiatrist designated by the trial court. We have determined that justice would be served by a change of judge to hear this case. Accordingly, District Judge William A. Neumann is assigned, and the clerk of this court will execute the appropriate notice thereof.

The record is forthwith remanded to the clerk of the district court of Ramsey County.

VANDE WALLE, SAND and PAULSON, JJ., and SCHNEIDER, District Judge, concur.

SCHNEIDER, District Judge, sitting in place of ERICKSTAD, C. J., disqualified.