**Martin WATTERS, Petitioner-Appellant,**

v.

**Ronald HUBBARD, Respondent-Appellee.**

No. 83–3044.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1983.

Decided Jan. 16, 1984.

---

J. Dean Carro, Margery Koosed (argued), Akron, Ohio, for petitioner-appellant.

Rita S. Eppler, Karen A. Kolmacic (argued), Asst. Attys. Gen., Columbus, Ohio, for respondent-appellee.

Before KEITH, KENNEDY and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

During 1979, Martin Watters was charged in Summit County, Ohio, with a seven count violation of Ohio law, including two counts of rape, robbery and aggravated robbery, and kidnapping. He entered a plea of not guilty and also not guilty by reason of insanity, but after trial the jury found him guilty on five of the seven counts. The Ohio Court of Appeals reversed the kidnapping conviction, but affirmed the rape, robbery and aggravated robbery convictions. Watters thereafter sought leave to appeal to the Supreme Court of Ohio, but the court *sua sponte* dismissed the appeal for want of a substantial constitutional question.

Watters next filed for habeas corpus relief in the federal district court alleging (1) the state trial court violated his Fifth Amendment privilege against self-incrimination by permitting two examining psychiatrists to testify as to inculpatory statements made by appellant during psychiatric examinations, and (2) his due process rights were violated by allocating to him the bur-

den of proving insanity ("irresistible impulse") by a preponderance of the evidence. The case was referred to a magistrate who recommended that the writ be denied. The district judge adopted that recommendation and denied the writ. Watters now contends the district court erred as to both issues. Finding no reversible error, we affirm.

Watters' convictions stem from two separate incidents, one in September, 1978, involving Mrs. Wanda Wolf, and the other in May, 1979, involving Mrs. Darlene Smith. Mrs. Wolf testified that while she was walking to a Convenience Store in Akron, Ohio, Watters attacked and raped her and took some possessions from her purse. Mrs. Smith testified that Watters asked her for a ride home from an Akron bar and she agreed. He directed Mrs. Smith to turn down an alley. When she refused and asked Watters to leave the car, he raped her, took money from her purse, and fled. Both women selected Watters' picture from a photographic array, and each positively identified him in court. No challenge is made to the identification procedure.

The only real defense raised at trial was that of insanity. Watters introduced the testimony of Drs. Gunther and Ramani, two court appointed psychiatrists, who had examined him prior to trial. Both concluded that Watters was insane at the time of the offenses. Each doctor testified that in reaching his conclusion he had relied to a considerable extent upon admissions of guilt made by Watters during the course of the psychiatric examinations. The prosecution was permitted to cross-examine the psychiatrists about Watters' admissions of guilt. Watters contends this violated Ohio statutory law and his Fifth Amendment privilege against self-incrimination.

■ The Ohio statutory language which appellant cites [1] is similar in its effect to language in 18 U.S.C. § 4244 which deals with psychiatric examination of defendants claiming mental incompetence in federal

1. Appellant relies on O.R.C. § 2945.39(D) which provides:

No statement made by a defendant in an examination or hearing relating to his mental

condition at the time of the commission of the offense shall be used in evidence against him on the issue of guilt.

courts. Nevertheless, appellant's argument is based on state law, and mere violation of a state statute is not cognizable as a ground for federal habeas corpus relief. *Combs v. Tennessee,* 530 F.2d 695 (6th Cir.), *cert. denied,* 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). We also note the state appellate court found the psychiatrist's statements were admitted not "on the issue of guilt", as prohibited by the state statute, but to show the bases for the psychiatrists' conclusions that appellant was insane.

■ The Ohio Court of Appeals further found Watters had waived the Fifth Amendment issue by failing to make a specific objection, as required under Ohio law, that the prosecutor's questions violated his privilege against self incrimination.[2] This procedural default bars federal habeas review absent a showing of both "cause" to excuse the default and "actual prejudice" to the petitioner. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir. 1982); *Hollin v. Sowders,* 710 F.2d 264, (6th Cir.1983).

Appellant belatedly seeks to establish "cause" for the procedural default by asserting that his argument is so novel it could not have been foreseen at the time of trial. "Actual prejudice," he contends, is self-evident. Assuming that an argument's novelty may constitute "cause" for a procedural default, we find that the cases cited by appellant do not support a novelty claim. Those same cases, and others, also indicate that appellant's argument fails on the merits; therefore, he has not demonstrated prejudice by reason of the procedural default.

■ The case authority cited by Watters shows that by the time of his trial several federal circuit courts had for some years recognized the Fifth Amendment implica-

tions inherent in evidence of inculpatory admissions to examining psychiatrists. *See e.g., Gibson v. Zahradnick,* 581 F.2d 75 (4th Cir.1978); *United States v. Bohle,* 445 F.2d 54 (7th Cir.1971); *United States v. Baird,* 414 F.2d 700; (2d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *United States v. Albright,* 388 F.2d 719 (4th Cir.1968). Consequently, we are not persuaded by appellant's claim that he was "without the tools to make a specific objection" until the Supreme Court's decision in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). *Cf. Engle v. Isaac, supra,* ("cause" not established by novelty since prior decisions could have supported petitioner's argument on allocation of burden of proof). In fact, it appears that appellant briefed his constitutional argument to the Ohio Court of Appeals prior to the decision in *Estelle v. Smith.* "Cause" for the procedural default cannot be based in this case on the alleged novelty of the claim.

■ We also conclude that "actual prejudice" from the procedural default cannot be shown because appellant's privilege against self-incrimination was not violated. The principal case on which Watters relies, *Estelle v. Smith, supra,* does not support his claim. The trial court in *Estelle v. Smith* had ordered a psychiatric examination of the defendant to determine his competency to stand trial. After being found competent, defendant was tried and convicted of murder. During the punishment stage of the bifurcated trial, the state presented direct testimony from the psychiatrist in order to describe the defendant's act of murder and to show the jury his lack of remorse.

[When] Dr. Grigson went beyond simply reporting to the court on the issue of competence and testified for the prosecu-

2. This court must accord a presumption of correctness to the factual finding of the Ohio Court of Appeals as to which specific objections were not made. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). The record does not rebut that presumption.

Defense counsel made several non-specific objections during both cross-examinations. At no time, however, did counsel even suggest that the prosecutor's questions infringed on petitioner's Fifth Amendment rights. The context indicates that defense counsel was objecting on such grounds as hearsay or opinion.

tion at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting.

*Estelle v. Smith,* 451 U.S. at 467, 101 S.Ct. at 1875. The Supreme Court held that the psychiatrist's testimony was introduced in order to enhance punishment, even to bring about a capital penalty, which was comparable to introducing it for the purpose of proving guilt. The Court held admission of the testimony for this purpose was a violation of the Fifth Amendment. The Court indicated, however, that if the psychiatrist's testimony had been limited to exploring the defendant's competency, there would have been no constitutional violation. *Id.* at 465, 101 S.Ct. at 1874.

Unlike the situation in *Estelle v. Smith,* appellant was not compelled to undergo a psychiatric examination. He raised the issue of insanity himself. Drs. Gunther and Ramani were not acting as agents of the state. In fact, they appeared as witnesses for the defense to substantiate appellant's claim of insanity. The elements of compulsion and custodial setting, which led to the decision in *Estelle v. Smith,* simply are not present in this case.

Also unlike *Estelle,* the challenged evidence in this case was not admitted for the purpose of proving appellant's guilt or enhancing his punishment. As found by the state appellate court and the district court below, Watters' admissions were brought out during cross-examinations of the psychiatrists in order to probe the bases of their conclusions that he was insane at the time of the crimes. Having raised the defense of not guilty by reason of insanity, Watters cannot complain when the state tests the validity of the expert opinions on which he relies.

Appellant also relies on *Gibson v. Zahradnich, supra,* but once again the case does not support his position. The psychiatrist who had examined Gibson was called by the state and "offered *solely* for the purpose of proving [the] incriminating statement"

made by Gibson prior to trial. *Gibson,* 581 F.2d at 78 (emphasis added). Indeed, the court in *Gibson* recognized the significant difference between the prosecution submitting evidence "indicative of the defendant's sanity" rather than evidence directly related to and submitted for the sole purpose of establishing guilt. *Id.; see also United States v. Albright, supra.*

Finally, appellant's position on this issue has been rejected in the very recent decision of this court in *Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983). *Noggle* involved a habeas corpus petitioner who claimed, *inter alia,* that the Ohio trial court had violated his Fifth Amendment rights by allowing rebuttal testimony from an examining psychiatrist. The district court denied the petition and this court affirmed. The specific sequence of events is set out fully in this court's opinion:

[T]he defense used two of the medical experts who had interviewed Noggle before trial as witnesses, Doctor Weitman, a psychologist, and Doctor Vincencio, a psychiatrist. The two doctors reported on the result of their evaluation of Noggle, detailing the family history and his "disassociative mental state" that subjected him to blank spells in high-stress situations. Both experts testified that Noggle was insane in response to the defense's hypothetical question that assumed, for the purpose of the sanity determination, that Noggle had been a participant in the stabbing. The defense did not inquire into any statements Noggle had made to the two doctors concerning the crime.

On cross-examination, and over an objection by defense counsel of unspecified "privilege," the two doctors narrated what Noggle had related to each of them about his participation in the killing of Mr. Grauer, including his statement that he had stabbed the victim at least once.

On rebuttal, the State called the third expert consulted by the defense, Dr. Resnick. The defense objection to Dr. Resnick's testimony, as precluded by the phy-

sician-patient privilege provided under Ohio law, was overruled. Dr. Resnick testified that the "defendant's own words, his description of his actions, his behavior is the most single important information in addition to the background material on which [to] base my conclusion." He narrated in detail statements made to him by Noggle during the course of his interview, including Noggle's statement that Noggle had stabbed the victim. The prosecution brought out during the testimony of this witness that a psychiatrist cannot tell the truth of such statements, Dr. Resnick stating: "There is no certain way that the psychiatrist can tell the veracity of the statements. There are two possibilities, one is the patient is consciously lying or distorting, and the other is that his own memory is impaired by, in this case, drugs or alcohol, so he does not have a clear recollection." On cross-examination defendant's counsel had Dr. Resnick repeat that the defendant had told him he had no intention of killing Mr. Grauer, and to restate that there is absolutely no way to tell whether Noggle, or any patient, was telling the truth or lying about the events.

706 F.2d at 1411 (footnote omitted). In considering the alleged Fifth Amendment violation, Judge Nies discussed *Gibson v. Zahradnick, supra,* and *Estelle v. Smith, supra,* as well as other cases, and concluded:

> We do not draw from this precedent, however, a conclusion that the scope of cross-examination of defense-called medical experts is constitutionally proscribed *per se* with respect to inculpatory statements. *The State is entitled to test the validity of an expert's opinion.*[9] Nevertheless, contrary to the District Court's view, we conclude that Fifth Amendment rights are relevant even after a defendant calls his own medical experts to the stand, with respect to the issue of his commission of the acts. Evidence of a defendant's inculpatory statements during a psychiatric examination cannot be admitted to prove guilt. To hold otherwise would make the privilege against self-incrimination illusory. Moreover,

such evidence should not be permitted to affect the jury's determination on that issue to any greater extent than is inherent in an insanity plea which unavoidably may contain an admission that defendant did the act but under circumstances for which he is not responsible.

> Thus it was permissible for the prosecution to have cross-examined the defense-called psychiatrist with respect to inculpatory statements made by the defendant and relied upon by that expert in formulating his opinion on the issue of the defendant's insanity. Those statements should have been disclosed on direct-examination before eliciting the opinion.

[9] Additionally, in contrast to Fed.R.Evid. 705, Ohio requires an expert witness to disclose the underlying facts on which an opinion is based before giving that opinion:

RULE 705. Disclosure of facts or Data Underlying Expert Opinion.

The expert may testify in terms of opinion or inference and give his reasons therefore *after disclosure of the underlying facts or data.* The disclosure may be in response to a hypothetical question or otherwise. [Emphasis added.]

706 F.2d at 1416 (emphasis added). We find it difficult to distinguish this case from *Noggle* and its rationale. The state is entitled to delve into a defense expert's basis for concluding that the defendant is insane and thus not accountable for the consequences of his conduct. Such an examination into the basis of a psychiatric opinion must necessarily cover the factors or elements that comprise the foundation of that opinion. In this case, as in *Noggle,* it is clear that what the defendant said about his criminal acts and the circumstances involved were important factors in the conclusions of insanity reached by Drs. Gunther and Ramani.

Watters also asserts as error the trial court's failure to give precautionary instructions, *sua sponte,* after the psychiatrists' testimony was admitted. That same argument was rejected by this court in *Noggle:*

> Such an instruction is of debatable effectiveness, not always desired by the defendant, and clearly cannot entirely erase

the testimony from the minds of the jurors. It is at best a device for balancing interests of the State and the defendant. In any event, while such an instruction may be necessary in some cases, we do not conclude that the failure of the trial judge to give an instruction, *sua sponte,* immediately following the expert's testimony was required by the guarantee under the Fifth Amendment against self-incrimination. Whether an instruction must be given is more appropriately tested by standards of due process, that is, the more nebulous test of general fairness of the trial as a whole.

706 F.2d at 1417.

■ There was no request for a special limiting instruction made by appellant at the time of the cross-examination of Drs. Gunther and Ramani. We agree with the Court in *Gibson v. Zahradnick, supra,* that prompt precautionary instructions should be given when evidence of admissions to a testifying psychiatrist are admitted so that the jury may be alerted to the limited purpose of such testimony. As in *Noggle,* however, the failure of the trial court *sua sponte* to give such an instruction is not a constitutional violation, if we are satisfied about the fairness of the trial, taken as a whole.

In summary then, we find that there was no federal constitutional impediment to the testimony of the appellant's psychiatrists that Watters had admitted the offenses with which he was charged, where the evidence was admitted *not for the purpose of showing guilt,* but to cross-examine and test the psychiatrists as to the bases for their expert opinions. Further, while a limiting

instruction is desirable in this situation, it is not constitutionally mandated. Thus, in the absence of a specific request for such a limiting instruction, where there has been an essentially fair trial, Watters' contention cannot prevail. Since appellant has established neither "cause" for nor "actual prejudice" from his procedural default, federal habeas corpus relief was properly denied on the Fifth Amendment claim.

Appellant also raises the claim that the burden of proving insanity by reason of "irresistable impulse" was impermissibly cast upon him.[3] In the context of a *McNaughten* insanity defense, the allocation of the burden of going forward with the evidence upon the defendant has been upheld as constitutional. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). *See also Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.1980).

■ Here, again, appellant's counsel made no objection at trial to the instructions given to the jury in this regard, as noted by the Ohio appellate court:

The trial court charged the jury, following the language of R.C. 2901.05(A), that the defendant had the burden of proving his affirmative defense of insanity by a preponderance of the evidence. No objection was made to this instruction and it is, therefore, waived.

In addition, this court has previously decided that it is constitutionally permissible to place the burden of proving insanity upon the defendant. *State v. Howze,* (1979), 66 Ohio App.2d 41, 420 N.E.2d 131. We adhere to that opinion and reject appellant's seventh assignment of error.

---

**3.** Ohio Rev.Code § 2901.05 provides in pertinent part:

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.

(B) As part of its charge to the jury in a criminal case, the court shall read the defini-

tions of "reasonable doubt" and "proof beyond a reasonable doubt," contained in division (D) of this section.

(C) As used in this section, an "affirmative defense" is either of the following:

(1) A defense expressly designated as affirmative;

(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.

We find that the failure of appellant's counsel to make a contemporaneous objection at trial to the instructions now complained about on appeal was a procedural default under Ohio law, and that the Ohio appellate court's affirmance of Watters' conviction was substantially based on this procedural deficiency. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Hockenbury v. Sowders,* 620 F.2d 111, 115 (6th Cir.1980); *Hollin v. Sowders, supra.*

■ The instruction given, furthermore, has not been demonstrated to have been erroneous under Ohio law at the time. *See State v. Seliskar,* 35 Ohio St.2d 95, 298 N.E.2d 582 (1973); *State v. Poole,* 33 Ohio St.2d 18, 294 N.E.2d 888 (1973). Indeed an identical challenge to an Ohio conviction was rejected on the merits by this Court in the recent case of *Howze v. Marshall,* 716 F.2d 396, (6th Cir.1983). Accordingly, we find no merit in appellant's second issue, the challenge to the instructions given on Watters' claim of insanity because he allegedly acted on an "irresistible impulse." Appellant's petition was properly denied.

We therefore AFFIRM the judgment of the trial court in all respects.

KEITH, Circuit Judge, dissenting.

Because I believe that the defendant's fifth amendment privilege against self-incrimination was violated when the state court admitted the psychiatrists' testimony which recited inculpatory statements that went to the issue of guilt, I respectfully dissent.

It is rudimentary that a psychiatrist's testimony is inadmissible against a defendant on the issue of guilt. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *Gibson v. Zahradnick,* 581 F.2d 75 (4th Cir.), *cert. denied,* 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978). Both psychiatrists testified the defendant told them "I raped the woman." The majority holds, however, that this testimony was admitted not to prove guilt, but rather to show the basis for the psychiatrists' opinion that Watters was insane. I am unpersuaded by this argument. The psychiatrists' statements to the jury were highly prejudicial and incriminating. In fact, these statements amounted to a confession. Certainly there were other ways to show a basis for the psychiatrists' conclusions on sanity.

The incriminating statement concerning the commission of the crime should have been omitted from the psychiatrists' testimony. It would have been possible to have shown a basis for the psychiatrists' conclusions without including the confession, "I raped the woman." As the court stated in *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976):

> We choose to permit ... compelled psychiatric examinations when a defendant has raised the insanity defense. *Since any statement about the offense itself could be suppressed,* a rule forbidding compelled examinations would prevent no threatened evil (emphasis added).

At the very least, fundamental fairness required a special cautionary instruction after the psychiatrists' testimony was submitted into evidence. I disagree with the Court's statement in *Noggle v. Marshall, supra,* which was relied upon by this panel, and in effect said that such cautionary instructions are of questionable effectiveness. 706 F.2d at 1417. The importance of giving a cautionary instruction to a jury cannot be overemphasized. As the Fifth Circuit stated in *Gibson v. Zahradnick, supra:*

> [i]t may be necessary in some cases for the psychiatrist, in testifying on the issue of sanity, to disclose the criminal activity related to him by the defendant, but, in that event, prompt and strong cautionary instructions are required that such testimony must not be considered by the jury on the issue of guilt.

581 F.2d at 79.

The trial court's failure to give such an instruction in light of the incriminating nature of the psychiatrists' testimony, was an

error of constitutional magnitude and violated defendant's fifth amendment privilege against self-incrimination.

Accordingly, I would reverse the district court's decision and remand for a new trial.