825 F.2d 408
 23 Fed. R. Evid. Serv. 922
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roy Webber TINDER, Jr., Defendant-Appellant.
 No. 86-5146
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1987.
Decided July 14, 1987.
 
 Philip Lee Russo, Jr. (Heilig, McKenry, Fraim & Lollar, on brief), for appellant.
 Susan Lynn Wyatt, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 On July 14, 1986, Roy Webber Tinder, Jr., was indicted by a federal grand jury on four counts of unlawfully possessing checks taken from the mail, in violation of 18 U.S.C. Sec. 1708 (1982). Count one was later dismissed at the government's request.
 
 
 2
 Count two charged Tinder with possessing a check drawn on the account of Beverly Enterprises and made payable to Marianne Greene. Similarly, count four charged Tinder with possessing a check drawn on the account of the Virginia Symphony and made payable to Thomas P. Reel. The evidence at trial showed that Tinder had presented these two checks at banks with endorsements for the payees and Roy Tinder on the back of each check. The banks had cashed both checks.
 
 
 3
 Count three charged Tinder with possessing four checks drawn on the account of Debra A. Marinuzzi. The evidence introduced at trial showed that Marinuzzi had ordered these checks through the mail but had never received them. Tinder had presented the four checks at various banks and cashed them. Each check contained the signature of Debra A. Marinuzzi as drawer or payor, and each was made out to Tinder as payee or endorsee.
 
 
 4
 After a jury trial in the United States District Court for the Eastern District of Virginia, Tinder was convicted on counts two, three, and four. On appeal, Tinder makes three arguments: (1) the district court's order requiring him to supply writing and print exemplars violated the Virginia Constitution; (2) the district court abused its discretion in admitting testimony of former postal inspectors concerning exemplars taken from Tinder in 1974; and (3) the evidence was insufficient to convict him of taking Marinuzzi's checks from the mail. We reject all three contentions, for the reasons set out below, and affirm Tinder's conviction.
 
 I.
 
 5
 Tinder's first two arguments concern the writing samples or exemplars that the government obtained from him at two different times. The government first took samples of Tinder's writing in 1974, while prosecuting him for an offense similar to the offenses charged in this case. In 1986, the government again sought samples of Tinder's writing in connection with the instant prosecution. The government moved for an order requiring Tinder to supply exemplars of his writing and fingerprints. Tinder objected to this motion, asserting that the government already possessed sufficient samples of his writing. During a hearing on the motion, the government explained that the 1974 exemplars did not contain the same words as the writing on the checks which the government sought to identify. The government asserted that its handwriting analyst could not determine whether the writing on the checks was Tinder's writing, because of a lack of sufficient exemplars. The district court entered an order requiring Tinder to supply the new, 1986 exemplars, which were subsequently admitted into evidence at trial.
 
 
 6
 Tinder claims that the district court's order requiring him to supply the exemplars violated the Virginia Constitution.[1] He focuses on Article I, Sec. 8 of the state constitution, which provides that an individual shall not 'be compelled in any criminal proceeding to give evidence against himself.' According to Tinder, the protection against 'giving evidence' is greater than the protection against being a 'witness' against oneself, which the fifth amendment to the United States Constitution affords.
 
 
 7
 The Supreme Court of Appeals of Virginia has explicitly rejected the argument which Tinder makes. See Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315, 318 (1963) ('The history and purpose of the constitutional privilege against self-incrimination provided by Sec. 8 [of the Virginia Constitution] show that it is to protect an accused against the employment of legal process to extract from his lips an admission of his guilt, and it does not extend beyond testimonial compulsion.'). Moreover, Tinder waived his objection based on the state constitution by failing to raise this objection below. Since the district court did not commit error, let alone plain error, we will not consider Tinder's new argument on appeal. See Fed. R. Crim. P. 52.
 
 
 8
 Tinder also argues that the district court abused its discretion in admitting the testimony of two former postal inspectors, Harman and Schick, who authenticated the handwriting exemplars they obtained from Tinder in 1974. Among other things, Tinder complains about Harman's statement that it was 'his [Schick's] case and I assisted him in it.' Tinder claims that this testimony informed the jury of his prior conviction for an offense similar to the offenses charged in this case. According to Tinder, the testimony and accompanying exhibits (exemplar forms with Tinder's writing, the date, and the name of the postal inspector receiving the exemplars), should have been excluded under Fed. R. Evid. 403, because the likelihood of prejudice they presented outweighed their probative value.
 
 
 9
 We disagree, and hold that the trial judge properly admitted this evidence under Fed. R. Evid. 403. This rule gives the trial judge broad discretion in determining the admissibility of evidence; his determination should not be upset unless it is irrational or arbitrary. See United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).
 
 
 10
 The danger of unfair prejudice to Tinder from the admission of the challenged evidence was, at most, minimal. The postal inspectors simply identified the exemplars. They never mentioned Tinder's earlier conviction, and the exemplars themselves did not indicate the conviction. Moreover, we note that Tinder did not make a motion in limine to exclude this evidence, nor did he request a limiting instruction after the court overruled his objection to admission of the evidence.
 
 
 11
 The admissibility of evidence is affected by the need for that evidence. See Gross v. Black & Decker (U.S.), Inc., 695 F.2d 858, 863 (5th Cir. 1983). The postal inspectors' testimony was necessary to authenticate the 1974 exemplars, since Tinder had refused to stipulate that they contained his handwriting. The 1974 exemplars, in turn, were necessary for purposes of comparing Tinder's writing to the writing on the checks. The handwriting analyst testified that Tinder had used natural writing in the 1974 samples and disguised writing in the 1986 samples. She explained that the two samples were necessary for comparison purposes, because the checks at issue contained both natural and disguised writing. We conclude that the trial court acted within its discretion in finding that the probative value of the testimony and the exemplars outweighed the danger of unfair prejudice. Accordingly, the trial court properly admitted that evidence.
 
 II.
 
 12
 Tinder also contends that the evidence was insufficient to convict him of knowingly and unlawfully taking Marinuzzi's checks from the mail. He points out that there was no direct evidence that the checks at issue had been mailed by American Bank Stationery, the check printer, or that the checks had been removed from Marinuzzi's mailbox. Tinder focuses on Marinuzzi's testimony that she had the only key to her mailbox, and that her mailbox had not been forcibly opened. According to Tinder, the checks could just as easily have been lost or misplaced as stolen from the mail.
 
 
 13
 We find Tinder's guesswork unconvincing. His hypothesis ignores the well-settled principle that a violation of 18 U.S.C. Sec. 1708 may be proved by circumstantial evidence. See Smith v. United States, 343 F.2d 539, 543-44 (5th Cir.), cert. denied, 382 U.S. 861 (1965). The circumstantial evidence was sufficient to support the jury's conclusion that Tinder had obtained Marinuzzi's checks from the mail. Marinuzzi had clearly ordered the checks at issue. In his testimony, the plant manager of the check printing company described how the checks were produced and routinely delivered by two employees to the post office. Since Marinuzzi had the only key to her mailbox, no one else could have unlocked her box and removed her checks. Tinder undisputedly obtained the checks, and he did not receive them from Marinuzzi. The conviction under Count Three, then, should stand.
 
 
 14
 For the reasons set out above, Tinder's conviction is
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Tinder concedes, as he must, that the court's actions did not violate his fifth amendment privilege against self-incrimination. See Gilbert v. California, 388 U.S. 263, 266-67 (1967) (taking of handwriting exemplars held not to violate defendant's fifth amendment rights, since such exemplars identified characteristics outside fifth amendment protection); United States v. Albright, 388 F.2d 719, 727 (4th Cir. 1968) (same)