Michael Kern, J.
A novel problem is presented by the District Attorney’s request for an order directing the defendant, charged with murder, to submit to psychiatric examination for the purpose of determining his mental capacity at the time he allegedly made confessions^ which will be the subject of a pre *85 trial hearing pursuant to People v. Huntley (15 N Y 2d 72). The problem is multifaceted, its major and underlying portion being one of first impression, those which branch from it having often presented themselves for solution. On the eve of trial, the prosecution presents the following in support of the application:
It is contended that the defendant, on or ¡about March 10, 1968, decapitated his wife and child. After he himself had visited certain law enforcement agencies, he was committed to Kings County Hospital for observation. While there, he made a statement, in the nature of la confession, to a hospital employee. Thereafter he made statements to police officers and to representatives of the office of the District Attorney of Kings County. An indictment, dated July 29, 1968, was presented to this court and thereafter a report of the Kings County Hospital, dated August 19,1968, contained the following: “ It is our professional opinion that the defendant is competent to stand trial as defined in Section 658 C. C. P. * * * although defendant was psychotic ■immediately after the murder of his wife and son, he has now recovered from this transient episode and is competent at this time.” An order was made confirming said report and the case is now ¡awaiting trial.
Counsel for the defendant, in opposition to the motion, argues that his reluctant inclination is to abide by his client’s precise and definite instructions not to put in issue the question of his sanity at the time of the commission of the crimes charged in the indictment. He asserts, however, that he will urge at the Huntley hearing that the confessions be stricken and withheld from consideration by the trial jury for the reason that they were made during a period when the defendant was in such a state of mental deterioration as to reject a finding that they were the voluntary products of a rational mind. It is obvious that if the defendant’s position is sustained, a finding to that effect must of necessity be determinative of the People’s case and must, accordingly, bring the case to a close, since there is no other evidence tó connect the defendant with the commission of the acts which resulted in the death of the victims.
Since the question of the defendant’s mental condition when he made the confessions relied upon by the District Attorney is, admittedly, of such importance, the prosecution seeks an opportunity to examine the defendant psychiatrically. The court, then, is confronted with objections by the defendant that, (a) there is no authority in law for the making of an order for psychiatric examination for use at a pretrial hearing; (b) he does not propose, at the trial, to interpose a defense of insanity at the time of *86 the commission of the crimes charged; and (c) he will rely upon the Fifth Amendment provisions against self incrimination.
The burden of establishing to the hearing court’s satisfaction that the defendant’s statements were made with full mental comprehension and understanding rests upon the People. Such must be their purpose and so, they hope, the court will conclude at the termination of the Huntley hearing. The defendant himself proposes to inject the issue in order to overcome the presumption of sanity (People v. Kelly, 302 N. Y. 512; People v. Egnor, 175 N. Y. 419). To permit the defendant the luxury of dealing with this subject at will and, at the same time to deny the People an opportunity to meet the issue head on, would be to fetter and hamstring the prosecution in the search, which the defendant proposes, to ascertain the truth as to the defendant’s mental capacity at the time of making the confessions. Our Court of Appeals, in People v. Di Piazza (24 N Y 2d 342), cited the case of Alexander v. United States (380 F. 2d 33, 39) and quoted from that case as follows: “ It would violate judicial common sense to permit a defendant to invoke the defense of insanity and foreclose the Government from the benefit of a mental examination to meet this issue.”
To the same effect the United States Circuit Court of Appeals said in Battle v. Cameron (260 F. Supp. 804, 806): “ To place the burden of proof on this issue on the Government and at the same time to deprive the Government of an opportunity for a mental examination of the defendant, would lead to an absurdity and would be a travesty on justice. ’ ’
The rationale in the Alexander case, on the subject of pretrial examination by the prosecution as to an issue upon which it hiad the burden, is to be found in the earlier case of Pope v. United States (372 F. 2d 710, 721), as pointed out by Circuit Court Judge Anderson in United States v. Baird (414 F. 2d 700, 707) in which it was held that: “ the granting of leave to the Government to have its own expert examine the accused as to his mental capacity violated no right of the accused not to incriminate himself ’ ’ and that ‘ ‘ the court also rested its decision on the concept of fair play in administering the adversary system.”
On the subject of self incrimination we are presented with a special situation. Notwithstanding that the defendant asserts that he will not interpose the defense of insanity at & trial his position must necessarily be one of flux. Should the court, after the Huntley hearing, determine that the statements allegedly made by the defendant were not tainted by a lack of mental capacity for full comprehension and for formation of a rational *87 judgment, a, trial of the issues will follow. The defendant may, at that time, experience a change in his thinking or, if he remains steadfast, he may find himself in the situation which was presented to the Appellate Division in this Department in the case of People v. Baxter (32 A D 2d 840), with the result that the defense of insanity may, in the interests of justice, be injected into the proceedings in spite of the defendant’s indifference thereto. The court, however, at this moment, must primarily direct itself to the question of the propriety of a psychiatric examination for use during a preliminary or Huntley hearing. Concerned as we now are only with the proposed inquiry into the mental capacity of the defendant at the time of making the statements referred to, the court is cognizant of the fact that at the trial, should there be one, the court may see the need to protect the defendant’s rights against self incrimination before .a jury by recitation of questions propounded by a psychiatrist and answers made thereto by the defendant relating to or bearing directly or indirectly on the issues of fact. However, for the purpose of this application, the court looks toward a pretrial hearing at which there cannot possibly be any prejudice by self incrimination. The only pertinent testimony will be such as bears upon the question of the defendant’s mental capacity at the time of the making of 'the statements. The court will be obliged to decide only that question rather thorn, the truth or falsity of the contents of the statements. The former must be passed upon initially by the court; the latter by a trial jury. We have no doubt that the defendant’s first step towards overcoming the presumption of sanity at the time of the making of the statements and thus, toward injection of the issue of mental capacity, will be to refer, by exhibit or oral testimony, to the findings of the psychiatrist at Kings County Hospital, and incidental thereto, to place before the court the defendant’s oral utterances largely upon which those psychiatrists came to their conclusions. This being so, the court, at the proposed preliminary inquiry, can be relied upon to treat the statements made by the defendant to all the interrogating psychiatrists as reflecting upon the general mental prospective and capacity of the defendant, rather than as incriminating admissions. A full discussion of this subject is contained in the court’s opinion in State v. Whitlow (45 N. J. 3). There, it was stated that (45 N. J., at pp. 15, 19): “ The very nature of the psychiatric study would seem to call for utterances or answers through conversation with the alleged incompetent. The psychiatric interview is the basic diagnostic tool. * * * The thesis is that such conversation's with and statements by *88 the defendant, whether or not they relate to the crime itself, are verbal acts; circumstantial evidence for or against the claim of insanity. They do not come in as evidence of the truth of the facts, asserted but rather, and only, as part of the means employed by the doctor in testing the accused’s rationality, mental organization and coherence. They are object-like factors used to ascertain mental abnormality or the reverse.”
The motion of the District Attorney is granted.