Jacob T. Zukermah, J.
I The Facts
Mrs. Dorothy D., the respondent in this neglect proceeding, had originally filed a child abuse petition against one James E., her paramour. On the 'basis of the evidence presented at a preliminary hearing thereon, the court on its own motion directed that a neglect petition be filed against Mrs. D. on behalf of her three children, Shirley D., Ernest D., and James D. The petition was filed by a caseworker for the Department of Social Services. The petition alleged that the children were *1013 neglected in that 11 the above children are suffering from the improper guardianship of their mother in that she is a limited and/or retarded person, that on or about 2/5/70 the respondent mother brought the children to the home of James E. whom she knew to be an assaultive individual. On 2/6/70 the said James E. pushed the child Ernest down a flight of stairs, as a result of which the child had to be hospitalized. The said James E. caused an unknown substance to be injected into the arm of the child Shirley.”
At the arraignment of Mrs. D, the court, after observation of the courtroom demeanor of the respondent mother, ordered a psychiatric examination of the mother in accordance with section 251 of the Family .Court Act over the objection of counsel for the respondent mother.
The respondent mother moves to vacate the order for the psychiatric examination by the court’s Bureau of Mental Health Services.
II Respondent’s position
Counsel for the respondent, Dorothy D. maintains that the privilege against self incrimination (U. S. Const., 5th Arndt.) prohibits the ordering or use of a psychiatric examination in a neglect proceeding prior to adjudication. He argues also that the BMHS report cannot be admitted into evidence at a fact-finding hearing unless the doctor making the report is available for cross-examination. He feels that the burden of proof, on all issues, is on .the petitioner and that the petitioner cannot rely on a psychiatric finding to establish his case; that to force the respondent to undergo such examination to disprove allegations against her ‘ ‘ flies in the face of the safeguards found in the Fifth and Fourteenth Amendments of the Constitution”.
III Petitioner’s position
Counsel for the petitioner maintains that the court has the authority to direct psychiatric examinations (Family Ct. Act, § 251; Matter of Blaine, 54 Misc 2d 248, 253; Matter of Young, 50 Misc 2d 271, 272; People ex rel. Ruppert v. Dinin, 49 Misc 2d 585, 588). He argues also that the Fifth Amendment does not prohibit the ordering or use of a BMHS report in a child-protective hearing and that under the new section 1046 of the Family Court Act (L. 1970, ch. 962), a BMHS psychiatric report can be admitted into evidence even if the doctor making the report is not present in court.
*1014 IV The court’s opinion
A. As to the Fifth Amendment privilege against self incrimination, the court finds that it is not applicable in this particular case.
A reading of Schmerber v. California (384 U. S. 757), relied on by the respondent, leads to the conclusion that it does not apply to a psychiatric examination in this type of situation. At page 761 the court states that this privilege ‘ ‘ protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature ”. It goes on to say (pp. 763-764): “ It is clear that the protection of the privilege reaches an accused’s communications, whatever form they might take, and the compulsion of responses which are also communications * * * On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling ‘ communications ’ or ‘ testimony, ’ but that compulsion which makes a suspect or accused the source of ‘ real or physical evidence ’ does not violate it.”
Having drawn this distinction, the court dubs it “ a helpful framework for analysis ” and notes that there “ will be many cases in which such a distinction is not readily drawn ” (p. 764).
With respect to psychiatric tests in child-protection cases, the testimonial-real evidence distinction is not relevant. In United States v. Albright (388 F. 2d 719, 723), a criminal case involving a psychiatric examination after a plea of insanity, the court said that ‘ ‘ The ‘ testimonial ’ or ‘ communicative ’ test of what is and what is not within the privilege against self-incrimination, involved in Schmerber v. California * # * is not an appropriate distinction .to be applied in the case at bar”. (See, also, Sas v. Maryland, 295 F. Supp. 389.) Furthermore, “ a defendant’s right not to incriminate himself is not violated per se by requiring him, in an appropriate ease, to submit to a mental examination.” (United States v. Albright, supra, p. 723; Sas v. Maryland, supra, p. 411.) The purpose of such an examination is not to determine anything about the defendant’s guilt but rather to determine something about the defendant’s mental and emotional condition relevant to the issues in the case. Any inculpatory statements which come to *1015 light in a psychiatric interview could accordingly be limited in use to the issue of mental condition and would not be used as substantive evidence of guilt. (United States v. Albright, supra, p. 723; Sas v. Maryland, supra, p. 411; State v. Whitlow, 45 N. J. 3; People v. Laudati, 61 Misc 2d 84.) That is, such statements are “ object-like factors used to ascertain mental abnormality or the reverse.” (United States v. Baird, 414 F. 2d 700, 709; State v. Whitlow, supra.)
We are presented with the problem that in a child-protective hearing, particularly one, as in this case, which deals with the psychological condition of the respondent, the psychiatric evidence may be such that it could directly affect the finding of the court. Thus in some cases it would be difficult, if not impossible, to separate the issue of mental condition from the issue of neglect. Yet the privilege against self incrimination, even if it were applicable in this case, should not attach so as to bar a compulsory BMHS report on these grounds. The very nature of a neglect proceeding demands altogether different considerations from those in a criminal proceeding. The Family Court has a duty, as well as a right, to inquire as to whether a parent is capable of caring properly for his children, for we are dealing with the protection of children. The psychiatric and psychological examination of a respondent parent is an essential tool in the protective process.
Furthermore, a parent need not fear that compelled psychiatric evidence will be used to impose criminal sanctions on him. There are no criminal sanctions in a neglect hearing. It is child protective in nature. In addition, the respondent always has the right to be examined by his own psychiatrist and psychologist and to present such testimony in rebuttal of the psychiatric testimoney offered by the petitioner.
It is our opinion that the Schmerber test does not apply to psychiatric examinations; requiring a psychiatric examination in a proper case does not violate the Fifth Amendment. Furthermore, since any inculpatory statement which might thereby be elicited would be completely inadmissible on the question of guilt, the privilege against self incrimination is adequately protected.
However, even if the Schmerber test does apply to psychiatric examinations, that test, as interpreted and implemented by the courts, is broad enough to allow such examinations. The cases interpreting and implementing the Schmerber decision indicate that the privilege against self incrimination protects only communications or testimony whose content bears on the issue of guilt. If this be true, then a psychiatric examination does not *1016 violate the privilege, for the content of communications elicited in such an examination does not bear on the issue of guilt but only on the issue of mental condition.
As noted before, the Supreme Court has said that the protection of the privilege against self incrimination “ reaches an accused’s communications, whatever form they might take ”. (Schmerber v. California, 384 U. S. 757, 763-764, supra.) However, the privilege offers no such protection against, among other things in a long list, compulsion to write or speak for identification (p. 764). The explanation given is the testimony-real evidence distinction. Belying on this distinction, the Supreme Court later said, in holding that lineups do not per se violate the privilege: “ It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. * * * Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a ‘ testimonial ’ nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt.” (United States v. Wade, 388 U. S. 218, 222, emphasis added.) Further elaboration came from Supreme 'Court in Gilbert v. California (388 U. S. 263, 266-267), wherein the court upheld the use of compelled handwriting exemplars: ‘ ‘ One’s voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication with the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or the body itself, is an identifying physical characteristic outside its protection.” (Emphasis added.)
Superficially, all the Supreme 'Court did in these cases was to allow communications which were also identifications. But the contrasts used by the court are important; identifications were allowed because they were ‘ ‘ not compulsion to disclose any knowledge he might have ”, United States v. Wade (supra, p. 222); or because they did not require the accused “ to speak his guilt ” (p. 223); or because “ the content of what is written ” was not the object of the compulsion (Gilbert v. California, supra, p. 266). “ Simply stated, all communications are not within the shelter of the privilege against self incrimination.” (People v. Suchocki, 57 Misc 2d 26, 28.)
Furthermore, “ The distinctions between compulsions of a communicative nature which are protected and those which produce only ‘ identifying physical characteristics, ’ or become the source of ‘ real or physical evidence, ’ which are not protected by *1017 the Fifth Amendment, are nebulous. ’ ’ (United States v. Green, 282 F. Supp. 373, 374.) Nevertheless, courts have, following Schmerber, allowed many different kinds of tests to be compelled upon defendants without violating their privilege against self incrimination. Courts have allowed compelled blood samples (Schmerber v. California, 384 U. S. 757, supra); tests for trackmarks (United States v. Mullings, 364 F. 2d 173); benzedrine tests for blood (Coleman v. United States, 371 F. 2d 343) ; fingerprinting exemplars (Pearson v. United States, 389 F. 2d 684; Gregory v. United States, 391 F. 2d 281; United States v. Smith, 393 F. 2d 687); performance and breathalyzer tests for drunkenness (People v. Suchocki, 57 Misc 2d 26, supra); and, last but not least, psychiatric tests (United States v. Baird, 414 F. 2d 700, supra).
In the course of this judicial evolution, the decisions have developed greater definition in the somewhat vague lines drawn by the Supreme ’Court in Schmerber. The Second Circuit, relying on Schmerber, upheld the use of handwriting exemplars because .they were used for identification, 11 not to communicate any information related to the issues being tried.” (United States v. Serao, 367 F. 2d 347, 350.) The then Judge Burger, in Lewis v. United States (382 F. 2d 817, 818) noted: “ Written words used as a handwriting sample and not for their meaning communicate nothing about knowledge of a crime. An exemplar is relevant only for the shape and direction of some lines and marks which may identify the writer, as fingerprints and photographs do. Words can be used as physical evidence, apart from their communicative content ”. (Emphasis added.) Similarly, a psychiatric test is not used to communicate any information related to the issues being tried. Statements elicited in such examinations are not used to communicate anything about knowledge of a crime; they are used as physical evidence — of mental condition — apart from their communicative content. Therefore, such tests do not violate the privilege against self incrimination.
The concern of the courts all along has been to ensure that the accused is not compelled to speak his guilt (Wade) or divulge knowledge of guilt (Wade) through the content (Gilbert, Lewis) of statements relating to guilt or the issues at trial (Serao). In this context, it is elementary that psychiatric tests do not violate the privilege against self incrimination, as the Second 'Circuit held in United States v. Baird (414 F. 2d 700, 709 supra). “ The statements which the defendant makes to the psychiatrist may be as vital for diagnosis as an x-ray or a blood test may be to a physician in another context”. *1018 That is, these statements are “ object-like factors ” gained by having (compelling, if necessary) an accused exhibit himself to a specialist for a certain test. Obviously, then, a psychiatric report is not prohibited by the testimonial-real evidence rule of ■Schmerber.
It is possible, however, that potentially incriminating statements may be a necessary part of a successful, beneficial psychiatric examination. Then it would be possible to get the incriminating statement into evidence via the psychiatric report. However, courts have recognized this possibility and have assiduously protected the rights of the accused by limiting the use of such statements to the issue of mental condition and by not allowing them to be used as substantive evidence of guilt. (United States v. Albright, 388 F. 2d 719, supra; Sas v. Maryland, 295 F. Supp. 389, supra; State v. Whitlow, 45 N. J. 3, supra; People v. Laudati, 61 Misc 2d 84, supra.) In this way the only potential damage of a psychiatric examination is eliminated.
As noted above, the issue of mental condition may in some cases be inseparable from the issue of neglect. But, as demonstrated above, even in those cases, the respondent’s privilege against self incrimination is adequately protected.
B. As to the respondent’s contention that a psychiatric report cannot be admitted into evidence at a hearing unless the doctor malting the report is available for cross-examination, the court finds that the motion is somewhat premature. The proper time for making such objection is when the psychiatric report is offered in evidence. However, in anticipation of such an objection, the court feels that the parties should know that the psychiatrist making such report will be called upon to testify and to be cross-examined at the request of the respondent. Even though the new section 1046 of article 10 of the Family 'Court Act repealed article 3 of the Family Court Act and replaced it, it was since the inception of this proceeding and thus it is not applicable to this proceeding. Furthermore, while it is clear that the legislation, in so amending the statute, intended that a medical report relating to a child in an abuse or neglect proceeding, of any hospital or any other public or private agency, shall be admissable in evidence in proof of that condition, act, transaction or event, if the Judge finds that it was made in the regular course of such business to make it, etc., it is not at all clear that this was intended to apply to a psychiatric report as to the condition of a respondent, particularly when ordered by the court over the objection of the respondent. In any event, it is the purpose of the change to allow the founda *1019 tion to be laid by certification rather than by the personal appearance of a hospital or agency officer. Its purpose is not to deny any party the right to cross-examine the author. Accordingly, when and if the petitioner offers the report in evidence and it is so entered, it will be done so only subject to the presence of the author thereof, so that the respondent may have the right to cross-examine, unless the respondent waives that right.
V Decision
The motion to vacate the order for the psychiatric (BMHS) examination of the respondent mother, Dorothy D. is denied.