Felice K. Shea, J.
In this proceeding to transfer guardianship and custody of an infant, respondent mother moves to vacate the court’s order that she undergo psychiatric examination on the ground of her Fifth Amendment privilege against compulsory self incrimination. [1]
The infant herein was born May 11, 1972 and has been in the care of petitioning agency since April 17, 1973. Her father *307 has signed a surrender for her adoption. Her mother is alleged to have suffered continuously from serious mental illness which, if proved, is a ground for dispensing with parental consent to adoption. The petition is brought pursuant to subdivision 7 of section 384 of the Social Services Law which provides, in pertinent part:
"(a) If the parent, whose consent would otherwise be required under this section, be determined to be presently and for the foreseeable future unable to provide proper and adequate care, by reason of mental illness or mental retardation, for a destitute or dependent child who has been in the care of an authorized agency for not less than one year immediately prior to the institution of a proceeding pursuant to this subdivision seven, the guardianship of the person and the custody of such child may, if the best interests of the child so require, be committed to an authorized agency by order of the family court * * *
"(b) 'Mental illness’ means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child’s physical, mental or emotional wellbeing would be endangered.”[2]
The court ordered that respondent submit to a psychiatric examination in accordance with section 384 (subd 7, par [g]) of the Social Services Law which mandates: "In every case the judge shall cause the parent to be examined by, and shall take the testimony of * * * a psychiatrist, in the case of a parent alleged to be mentally ill * * * to be appointed by the court”.
The court conceives respondent’s objection to the plain words of the statute (supra), as a twofold claim of denial of her privilege against self incrimination. On the one hand, she claims the privilege for any statements made to the psychiatrist which might reveal a crime or tend to connect her with a criminal act. More fundamentally, she is asking the court to *308 treat mental illness as equivalent to a crime, since proof of that condition will have grave consequences for her, and to expand the privilege to information given a psychiatrist which might prove mental illness.
The privilege against self incrimination applies to testimony and communications in civil as well as criminal litigation (McCarthy v Arndstein, 266 US 34, 40), but it does not limit the compulsion of conduct, or nontestimonial evidence. (See, e.g., United States v Wade, 388 US 218 [line-up]; Gilbert v California, 388 US 263 [handwriting exemplar]; Schmerber v California, 384 US 757 [blood test]; People v Craft, 28 NY2d 274 [blood test]; Richardson, Evidence, § 526 [10th ed, 1973].)
The New York courts have not hesitated to compel psychiatric examinations when relevant to the action. (People v Truck, 170 NY 203; People v Kemmler, 119 NY 580; People v Blank, 64 Misc 2d 730.)[3] In applying the testimony-conduct distinction, the courts have protected the accused by treating statements made to the psychiatrist as "verbal acts”, relevant only to the issue of mental condition, and not as evidence of the truth or falsity of the facts asserted. (United States v Baird, 414 F2d 700; People v Laudati, 61 Misc 2d 84.) Any incriminating statement made by respondent during psychiatric examination would be similarly protected. ■
In order for the claim of privilege to be honored, the threat posed must be criminal. (Matter of Zuckerman, 20 NY2d 430.)[4] A finding of mental illness in this proceeding cannot subject respondent to either criminal penalty or loss of freedom. Subdivision 7 of section 384 of the Social Services Law contains no criminal sanctions, and the psychiatric examination cannot expose her to criminal prosecution. Nor can statements made by respondent to the psychiatrist be evidence against her in a civil commitment proceeding, since any order herein together with the papers on which it is based must be sealed (Social Services Law, § 384, subd 7, par [e]), and a determination of mental illness "shall in no way affect any other right, or constitute an adjudication of the legal status of the parent.” (Social Services Law, § 384, subd 7, par [f].)[5]
*309 Respondent’s claim that it would be unfair to compel an examination which might establish her mental illness must be weighed against considerations of fairness to the child. In Matter of Shirley D. (63 Misc 2d 1012) the Family Court rejected the claim of Fifth Amendment privilege by a respondent in a neglect proceeding who was ordered to undergo psychiatric examination.* ****[6] In refusing to vacate his order, the late learned Judge Jacob T. Zukerman stressed the child protective purpose of a neglect proceeding. "The Family Court has a duty, as well as a right, to inquire as to whether a parent is capable of caring properly for his children, for we are dealing with the protection of children. The psychiatric and psychological examination of a respondent parent is an essential tool in the protective process.” (63 Misc 2d, at p 1015.)
The purpose of the guardianship proceeding herein, brought under a 1973 amendment to the Social Services Law,[7] is to afford a child whose parent or parents will never be able to care for him because of mental illness an opportunity to have a loving and nurturing adoptive home. In a memorandum supporting the 1973 amendment, New York City’s legislative representative wrote: "Many children, whose parents have been unable to care for them, visit them, plan for them, or in any way maintain a relationship with them, will be enabled to achieve permanency through adoption. This will assure them of the stability which foster care can never guarantee and which is needed by every child, perhaps most of all those with a family history of mental illness.”[8]
In all legislation permitting the termination of parental rights, the basic and vexing issue is where to draw the line *310 between the conflicting rights of parent and child. Looked at from the standpoint of the community, the question is how to ensure that children will receive the guidance and affection they need to become responsible and productive members of society without denying the parent due process of law.
The policy of the Legislature is to end foster care and free, the child when a parent will never be able to give the child a home. That policy could be frustrated by transplanting a criminal doctrine to this proceeding, which is nonpunitive and in which respondent’s rights are safeguarded. The parent’s interest in freedom from the intrusion of a psychiatric examination must give way to the interest of the child and society in knowing whether the parent is mentally ill. The court concludes that the privilege against self incrimination cannot be asserted to prevent a psychiatric examination of respondent in this action.
Respondent’s motion is denied.

. The Fifth Amendment to the United States Constitution, applicable to the States by reason of the Fourteenth, states that no person "shall be compelled in any criminal case to be a witness against himself’ (see also NY Const, art I, § 6).

. A recent study of neglect statutes in 54 American jurisdictions, as amended through August 31, 1974, lists 18 jurisdictions as providing for termination of parental custody on a finding of mental illness or mental deficiency. Katz, Howe and McGrath, Child Neglect Laws in America, 9 Fam LQ 1 passim. Omitted from the survey is any statute which, like subdivision 7 of section 384 of the Social Services Law, does not appear as part of a permanent neglect law. (Cf. Family Court Act, art 6, part 1). Research has revealed no reported cases in other jurisdictions in which constitutional objection to psychiatric examination has been raised by a parent alleged to be mentally ill.

. Accord, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2265.

. Authority exists for application of the privilege to civil commitment proceedings where personal liberty is at stake. (Lessard v Schmidt, 349 F Supp 1078, injunction order vacated 414 US 473; McNeil v Director, Patuxent Inst., 407 US 245, 257 [concurring opn by Douglas, J].)

. Other protections for the rights of a parent alleged to be mentally ill are found *309 in section 384 (subd 7, par [d] of the Social Services Law (a finding of mental illness can be made only upon clear and convincing evidence); paragraph (g) (the parent may cross-examine any psychiatrist who examines him or her and may submit psychiatric evidence in addition to that of the court-appointed psychiatrist); paragraph (h) (the parent has a right to counsel which may not be waived).

. From its inception, the Family Court has had broad power under section 251 of the Family Court Act to order psychiatric examination of any person within its jurisdiction and has used this power in a wide range of cases. (See, e.g., Marks v Marks, 24 AD2d 1017, aifd 17 NY2d 787; Matter of Grado, 44 AD2d 854; People ex rel. Rupert v Dinin, 49 Misc 2d 585. See, also, CPLR 3121 cited as authority for a Family Court order of psychiatric examination in Martin v Martin, 72 Misc 2d 222.)

. L 1973, ch 863, § 2.

. Memorandum of City of New York, prepared by Richard A Brown, legislative representative, 1973 NY Legis Ann 199-200.