■ In the Matter of MOISES D. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; LYDIA D. et al., Respondents. (Proceeding No. 1.) In the Matter of BABY GIRL D., Also Known as NOAMI D. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; LYDIA D. et al., Respondents. (Proceeding No. 2.)—In two child protective proceedings pursuant to Family Court Act article 10, the appeal is from an amended order of the Family Court, Kings County (Pearce, J.), dated November 25, 1986, which dismissed

the petitions alleging that Moises D. and Noami D. were neglected children.

Ordered that the amended order is reversed, on the law and the facts, without costs or disbursements, Moises D. and Noami D. are adjudicated neglected children, and the matter is remitted to the Family Court, Kings County, for a dispositional hearing.

The respondents are the parents of nine children, seven of whom are presently in the custody of the petitioner as a result of previous neglect proceedings instituted prior to the birth of the two children who are the subjects of the instant proceedings. The evidence at the fact-finding hearing established that the respondent father used unreasonable disciplinary measures against the subject children's two oldest siblings when those children were returned to the respondents' custody on a trial basis in 1985. Specifically, the father kicked 15-year-old Nancy in the stomach and threatened her with a knife and hammer, and often struck 14-year-old Osmundo, Jr., with a belt, leaving red welts on his arms and legs, and twice hit him with a stick. As a result of these abuses, Nancy and Osmundo, Jr., were returned to the petitioner's custody. The record also reveals that the father has a long history of psychiatric illness. In 1976 and 1977 he was hospitalized after believing he heard threatening voices telling him he was possessed by an evil spirit. During these admissions he was diagnosed as suffering from paranoid schizophrenia.

Moreover, in October 1980, while visiting his institutionalized four-year-old autistic son Raymond, the father, in an apparent effort to "heal" the child by the "laying [on of] hands" around the child's throat, exerted such pressure that the boy's face and neck became discolored. The father ignored the pleas of an institutional aide to release Raymond from his grip, and the two had to be separated by other institutional personnel. The respondent mother, who was present during this incident, did nothing to prevent the father from injuring the son, and, in fact, asked the institutional aide not to interfere.

The father was charged with attempted murder in the second degree, and, after pleading not responsible by reason of mental disease or defect, was hospitalized at Mid-Hudson Psychiatric Center. There, he was again diagnosed as suffering from paranoid schizophrenia. In July 1983, the father was transferred to Kingsboro Psychiatric Center, from which he was released in November 1984. The discharge summary

stated that aggressive outpatient followup was required to insure that the father did not endanger his children. However, there was no family participation in the formation of an aftercare plan because the mother believed the hospital staff to be "evil people".

At the fact-finding hearing, a psychiatrist, who twice examined the father and studied his medical records, testified that although the father then had no acute psychotic symptoms, he was a chronic residual schizophrenic. Since a psychotic episode could be triggered by intrafamily stress, it was the psychiatrist's opinion that the safety of the subject children required that they not be returned to the respondents' custody in the absence of supervision.

The Family Court dismissed the petitions, concluding that the allegations that the children were neglected, or in imminent danger of being neglected, were not supported by a preponderance of the evidence, apparently because the children who are the subjects of the instant petitions had not be mistreated. Additionally, the court appeared to discount the psychiatrist's diagnosis that the father was schizophrenic, and instead accepted the respondents' psychiatric social worker's diagnosis of schizotypical disorder. We disagree.

The proof of the father's neglect of Raymond, Nancy and Osmundo, Jr., was sufficient, under the particular facts of this case, to establish that Moises and Noami were neglected children (see, Family Ct Act § 1046 [a] [i]; Matter of Christina Maria C., 89 AD2d 855). That evidence compels the conclusion that the father has distorted notions of how children should be disciplined. The disobedience of Nancy and Osmundo, Jr., who were old enough to resist their father's wishes, resulted in inappropriate and dangerous punishment. As Moises and Noami grow older, they could be in danger of similarly harsh punishment for any disobedience on their part.

Moreover, the psychiatrist presented compelling evidence that the father continues to suffer from schizophrenia, and that the stress attendant upon the return of the two infant children might exacerbate his condition and result in the type of acute and dangerous psychotic behavior that was directed against Raymond in 1980. In this regard, it should be noted that the respondent mother testified that she did not believe Raymond's safety was endangered in the 1980 incident, that the father merely performed an "oration" on Raymond; and that she would allow such an "oration" to be performed on Moises.

While past deficiencies and psychiatric hospitalizations do not, by themselves, establish neglect or unfitness, the medical records and psychiatric testimony in this proceeding support the petitioner's assertion that if the children are released, without supervision, to the respondents, there would be a substantial probability of neglect *(see, Matter of Eugene G.,* 76 AD2d 781; *see also, Matter of Millar,* 40 AD2d 637, *affd* 35 NY2d 767).

The evidence adduced in these proceedings, when viewed in its entirety, logically supports the conclusion that the respondents have a faulty understanding of the duties of parenthood and the acceptable methods of fulfilling their parental obligations. Thus, it must be concluded that Moises and Noami are neglected children because there is a substantial risk that their mental, emotional or physical condition is in imminent danger of becoming impaired by the infliction of excessive corporal punishment, or the improper and dangerous treatment of the children's physical or emotional problems *(see,* Family Ct Act § 1012 [f] [i] [B]; *Matter of Christina Maria C., supra).* The matter must therefore be remitted to the Family Court for a dispositional hearing to determine which of the various dispositions authorized by Family Court Act § 1052 will best insure the well-being of Moises and Noami, while maintaining, to the fullest possible extent, the integrity of this troubled family. Mangano, J. P., Thompson, Niehoff and Spatt, JJ., concur.