OPINION OF THE COURT
Paula J. Hepner, J.
The Commissioner of Social Services filed a neglect petition against the respondent alleging she is unable to provide a minimum degree of care for her eight-year-old child because the respondent "has a history of hospitalizations for mental illness dating back to 1974” and because she "often exhibits strange behavior in that she forgets where she is and talks incoherently, and forgets to administer the child’s medication.”
The court is presently conducting a hearing pursuant to section 1028 of the Family Court Act to determine whether the child would be in imminent risk if returned to her mother. Thus far, the Commissioner of Social Services has presented the testimony of two caseworkers, respondent’s daughter and son-in-law, respondent’s sister and brother-in-law, and one of the respondent’s friends, and has offered into evidence medical records covering the respondent’s past psychiatric hospitalizations. The Commissioner now moves by order to show cause to have the respondent submit to a psychiatric examination by a court-appointed psychiatrist because "the respondent’s present mental state is central to the issue * * * and a psychiatric examination of the respondent by a court-appointed psychiatrist would aid the court in its initial determination as to whether Verena E. would be at imminent risk to her life and health if returned to the respondent prior to a fact-finding as well as essential in deciding the ultimate issue of neglect at trial.”[1] The Commissioner argues in her memorandum of law that the evidence presented "documents a past history of diagnosed mental illness and gives rise to the possibility of a recent recurrence * * * and since the testimony has been entirely from lay persons, it is absolutely necessary for the court to have the assistance of a psychiatric examination of *466 the respondent performed by a competent psychiatrist.”[2] Does the court have the authority in a child protective proceeding under article 10 of the Family Court Act to order a pretrial mental health examination which could then be used by the petitioner to establish the allegations of neglect against the respondent? For the reasons set forth below, the court believes it does not.
Petitioner and the Law Guardian, who also supports this application, contend that Family Court Act § 251 gives the court the power to order the respondent to submit to a prefact-finding mental health evaluation to establish that her present actions are manifestations of a recurrent mental instability which places this child in imminent risk. Section 251 authorizes involuntary remands to city and State psychiatric facilities for emergency observation to assess whether a person is a danger to himself or others, and psychiatric or psychological assessments performed by independent court-op-pointed experts through the court’s auxiliary services. This section has been used as authority for the court to direct pretrial forensic evaluations of parties to custody and visitation proceedings. There is voluminous case law holding that the court should order independent mental health evaluations through the auxiliary services available to the court when serious issues of fitness arise in custody matters so that an inquiry can be made into the backgrounds and psychological make-up of the parties and the child’s needs. (Matter of Vernon Mc. v Brenda N., 196 AD2d 823 [2d Dept 1993]; Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C240:18, at 619.)
While the Family Court has broad discretion to determine whether a mental health examination should be ordered, its authority under Family Court Act § 251, however, is limited by subsequent articles of the Family Court Act. Article 10, governing child protective proceedings, does not contain a statute authorizing the court to order pretrial psychiatric, psychological or psychosocial examinations or reports. It does, however, contain a statute pertaining to predispositional examinations and reports. Family Court Act § 1047 (b) specifically provides that reports prepared by any of the court’s auxiliary services for use by the court in making an order of disposition "may not be furnished to the court prior to the *467 completion of a fact-finding hearing, but may be used in a dispositional hearing.”
The reasons for the differential treatment of litigants in a custody proceeding and litigants in a neglect proceeding are obvious. In custody matters, presumably the petitioner and respondent stand on equal footing. By making a request for custody, the parties voluntarily place in issue their "fitness to parent” of which their mental and emotional condition is a factor. However, in child protective proceedings, the parent is involuntarily brought before the court and charged with allegations of neglect. The State wields its power to intervene in the parent-child relationship, an action which for the present may lead to temporary removal of the child from the home, and which could later result in a permanent severance of the respondent’s parental rights. In child protective proceedings, therefore, it is the burden of the accuser to prove, by a preponderance of the evidence, that the allegations are true before the stigma of neglect attaches. The respondent should not be compelled by the court to facilitate her own adjudication of neglect.
Recent statutory amendments reinforce this court’s view that it is implicit in the language of Family Court Act § 1047 (b) that the Legislature did not intend to authorize pretrial examinations in child protective proceedings. Section 1038-a was added to the Family Court Act in 1987. It provides that a court may order a respondent to provide nontestimonial evidence if it is reasonably related to establishing the allegations in an abuse or neglect petition. The legislative history reported in connection with this statute explains that this amendment is necessary because "it is doubtful that [such] an order [w]ould withstand appellate review” were it to direct a respondent to submit to a medical examination at a preliminary stage of a proceeding relating to abuse or neglect. (1987 McKinney’s Session Laws of NY, at 2565, 2566.) The evaluation sought by the Commissioner in the instant matter would require the respondent to engage in an extended dialogue with a mental health professional, the content of which would surely bear upon the question of neglect. That would constitute a form of testimonial evidence and, therefore, does not fall within the type of medical examination contemplated by Family Court Act § 1038-a.
Case law decided under Family Court Act § 1047 (b) reaffirms the view that it would be improper for the court to order and consider pretrial mental health studies. Most recently, the *468 Second Department held that in a child neglect proceeding, the court could not order the Probation Department to furnish reports to the court prior to completion of the fact-finding hearing. The Court ruled that section 1047 (b) was "designed to enable the Family Court to decide the issue of neglect in the first instance, before it receives specific dispositional recommendations that presuppose the existence of neglect”. (Matter of Bennett v Collins, 111 AD2d 328, 330 [2d Dept 1985]; see also, Matter of Sharnetta N., 120 AD2d 276, 281 [1st Dept 1986]; Matter of Arroyo, 37 AD2d 531 [1st Dept 1971]; Matter of Urdianyk, 27 AD2d 122 [4th Dept 1967]; Matter of Carl A., 81 Misc 2d 354 [Fam Ct, Kings County 1975].)
The only case to suggest that the court has the power to order a pre-fact-finding mental health study is Matter of Shirley D. (63 Misc 2d 1012 [Fam Ct, Kings County 1970]). In Shirley D., the respondent was alleged to be mentally retarded and, therefore, unable to provide proper supervision and guardianship of her children. The court ordered her to submit to psychological testing to determine if she was mentally retarded. Finding that "a psychiatric test is not used to communicate any information related to the issues being tried”, the court believed it was possible to separate the issue of the respondent’s mental condition from neglect, and ordered the examination. (Matter of Shirley D., supra, at 1017.) The court recognized, however, that "potentially incriminating statements may be a necessary part of a successful, beneficial psychiatric examination” and, when this happens, acknowledged that courts "have assiduously protected the rights of the accused by limiting the use of such statements to the issue of mental condition and by not allowing them to be used as substantive evidence of guilt.” (Supra, at 1018.) Matter of Shirley D., therefore, provides no support for the application in the instant matter because the opinion the Commissioner seeks to elicit from the psychiatrist is addressed to "the ultimate issue of neglect at trial.” (See, affirmation quoted supra, at 465.)
The Commissioner’s counsel correctly points out that the record, as it now stands, consists of the testimony of lay witnesses who have reported what they have observed and medical records documenting the respondent’s past hospitalizations from 1974 and 1975. The court does not possess the expertise of a mental health clinician and cannot determine whether the respondent’s behavior when the petition was filed was symptomatic of a reoccurring paranoid schizophrenia. The *469 dilemma in which the Commissioner now finds herself might have been avoided by having the respondent evaluated before the petition was filed and offering the reports and testimony of that individual as part of her direct case. Or the Commissioner could engage a mental health clinician to read transcripts of the testimony given by the witnesses and review the respondent’s psychiatric records produced to this court and testify to hypotheticals drawn from the factual material contained in the record. Instead of utilizing these methods, the Commissioner has sought to enlist the auxiliary services of the court in adducing the proof she hopes will establish imminent risk in the present hearing and at the next stage of the proceeding, a prima facie case of neglect. Were the court to do this, it would cease to be the neutral trier of fact and would become, instead, an arm of the prosecution.
There is another reason why the Commissioner’s motion is improper. Commencing with Justice Murphy’s dissent in Matter of Millar (40 AD2d 637 [1st Dept 1972], affd 35 NY2d 767 [1974]), in which he wrote that "[i]t is not sufficient to merely show the mother’s deficiencies without also establishing that the child is suffering or likely to suffer from neglect” (supra, at 638), a line of cases has evolved holding that "[t]he fact that the respondent had a previous history of mental and emotional illness and had been confined at one time in a State hospital is not conclusive as to whether the respondent * * * is now suffering from mental or emotional illness at the time of the hearing * * * The fact that a person may at one time have been a mental patient or confined to a State hospital is not neglect per se. It is not unfitness per se * * * The imperfection must ripen into unfitness by connecting the actual elements or indicia of neglect stemming from such unfitness under the statute * * * Furthermore, in neglect proceedings, the court’s duty is to determine whether despite any past deficiency, [the] children at the time of the hearing are suffering or likely to suffer from neglect.” (Matter of Karr, 66 Misc 2d 912, 915 [Fam Ct, Richmond County 1971]; see also, Matter of Moises D., 128 AD2d 775 [2d Dept 1987]; Matter of Eugene G., 76 AD2d 781 [1st Dept 1980]; Matter of Daniel C., 47 AD2d 160 [1st Dept 1975].) An examination of the respondent’s mental condition at the present time is not relevant to the *470 issue before the court which is whether she was unable to care for her child in July 1994 when the petition was filed.
For all of the foregoing reasons, the petitioner’s application for an order directing the respondent to submit to a psychiatric examination by a court-appointed psychiatrist is denied.

. Affirmation of Judith Anthony, Esq., dated Sept. 23, 1994, at f 5.

. Petitioner’s memorandum of law, at 2.