■ In the Matter of JESSE DD. and Another, Children Alleged to be Neglected. COMMISSIONER OF THE SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BRENDA EE., Appellant. [636 NYS2d 925] —Spain, J. Appeal from an order of the Family Court of Schenectady County (Griset, J.), entered April 2, 1993, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be neglected.

Respondent is the biological mother of a son, Jesse (born in 1981), and a daughter, Alysha (born in 1986). This neglect proceeding was commenced by petition dated August 8, 1991 which alleged, *inter alia*, that respondent suffers from an emotional illness as defined in the Mental Hygiene Law and the Social Services Law (*see*, Mental Hygiene Law § 1.03 [20]; Social Services Law § 384-b [6] [a]) and is unable to properly

care for her infant children, and that she has not been compliant with the local mental health agency and has refused all treatment. On October 8, 1991 Family Court adjourned the proceedings in contemplation of dismissal for a period of one year on the consent of the parties, continued the children in respondent's care and issued two temporary 12-month orders, to wit, an order of protection and an order of supervision. The order of supervision directed respondent to cooperate with the supervision of the Schenectady County Department of Social. Services (hereinafter DSS), specifically directing her, in pertinent part, to meet with her caseworker when and where directed by DSS and to permit the caseworker to visit her home. An order of disposition made the same day directed that respondent abide by the aforesaid orders and additionally directed that she cooperate with and participate in counseling at the local mental health agency and that she "insure" that the children attend counseling at an agency designated by DSS.

Thereafter, a violation petition, dated March 9, 1992, was filed which alleged that respondent refused to insure that the children attend counseling and that she refused a DSS caseworker access to her home in violation of the order of supervision. On March 11, 1992, after a hearing, Family Court issued a temporary order of removal. Thereafter, an amended neglect petition, dated March 30, 1992, was filed against respondent and a fact-finding hearing was commenced April 2, 1992 on the amended neglect petition and the violation petition. At the hearing DSS called five mental health professionals as witnesses; respondent called no witnesses. Family Court concluded, *inter alia*, that respondent suffered from a mental disease or illness which affected her ability to properly care for her children, that she failed to cooperate and participate in the necessary treatment services recommended to improve her circumstances and that the children were neglected as defined in the Family Court Act. Respondent thereafter consented to a dispositional order placing the children in the care and custody of DSS. Respondent appeals.

We affirm. The Family Court Act defines "neglected child" as a child, less than 18 years old, "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]). A respondent's mental condition may form the basis of a finding of neglect if it is shown by a preponder-

ance of the evidence that his or her condition resulted in imminent danger to the children (*see, Matter of Madeline R.*, 214 AD2d 445, 446; *see also*, Family Ct Act § 1046 [b] [1]).

One of the five mental health professionals who testified at the hearing stated that her May 1992 interview with respondent lasted only 15 minutes due to respondent's refusal to continue, which at least confirms a consistent pattern of respondent's lack of cooperation even during a period of time she was under the watchful eye of Family Court. The remaining mental health professionals included a psychiatrist at the Capital District Psychiatric Center in Albany County where respondent was a patient in July 1991; a psychiatric social worker associated with Ellis Hospital's Mental Health Unit, Schenectady County's local mental health agency, who performed a court-ordered evaluation of respondent in October 1991; a psychologist who evaluated respondent in June 1992, after the commencement of the hearing; and a child psychologist who evaluated the children at the request of Family Court in September 1991.

In summary, the testimony of these four witnesses was consistent as to the concern respondent showed her children; that at the time of their particular evaluations respondent did not pose an immediate threat to her children, although they were exhibiting clear signs of stress, and that it was within the realm of possibility, although slim, that respondent could adequately care for her children. However, these witnesses also established that respondent suffered from some form of mental illness, that she repeatedly refused treatment for her condition, that without treatment respondent's condition would likely deteriorate and limit her ability to properly care for her children, and that the children were acutely in need of counseling.

The evidence adduced at the hearing clearly supports, by a preponderance of the evidence, Family Court's determination that respondent suffered from a mental illness which affected her ability to properly care for her children, that she was uncooperative, that she refused treatment for herself and for her children, that without treatment her condition would deteriorate, and that in light of her resistance to necessary treatment, the children were in imminent danger of becoming impaired. While mental illness will not, per se, support a finding of neglect (*see, Matter of Trina Marie H.*, 48 NY2d 742, 743; *Matter of Shelley Renea K.*, 79 AD2d 1073), proof of ongoing mental illness, along with the failure to engage in after-care treatment, which results in a parent's inability to care for his

or her children in the foreseeable future, provides a basis for a finding of neglect (see, Matter of Madeline R., supra, at 446; Matter of Naticia Q., 195 AD2d 616, 618; cf., Matter of H. Children, 156 AD2d 520).

There is ample precedent for upholding a finding of neglect upon a showing that " 'if the child [were] released to the mother there [would be] a substantial probability of neglect' " (Matter of Baby Boy E., 187 AD2d 512, quoting Matter of Eugene G., 76 AD2d 781, 782; see, Matter of Moises D., 128 AD2d 775, 778). Notably, "[n]o showing of past or present harm to the children is necessary to support a finding of neglect" (Matter of Madeline R., supra, at 446; see, Matter of Millar, 40 AD2d 637, affd 35 NY2d 767) and "[t]he possibility of improvement of a parent's condition is insufficient to offset proof of the parent's mental illness and refusal to follow prescribed treatment" (Matter of Naticia Q., supra, at 618; see, Matter of Vaketa Y., 141 AD2d 892, 893-894). In our view, Family Court did not abuse its discretion in basing its finding of neglect upon the high probability that the children would be harmed if respondent did not seek treatment for her mental illness; respondent's refusal to seek such treatment constituted a clear threat to the welfare of the children.

Cardona, P. J., Mikoll, Crew III and Casey, JJ., concur. Ordered that the order is affirmed, without costs.