In the Matter of BRITTANY T., a Child Alleged to be Neglected. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHAWNA T. et al., Appellants. [852 NYS2d 475]—

Kavanagh, J. Appeal from an order of the Family Court of Chemung County (Brockway, J.), entered February 27, 2007, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to find respondents in willful violation of an order of supervision and placed respondents' child with petitioner.

In 2003, petitioner filed two petitions alleging that respondent Shawna T. (hereinafter the mother) and respondent Robert T. (hereinafter the father) neglected their child (born in 1994). In each petition, petitioner asserted that respondents neglected their child by failing to take steps designed to address her obesity and by not ensuring that she routinely attended school. When the petitions were filed, the child's weight placed her in the 99th percentile of the body mass index for children and led to a variety of health issues, including gallstones, excessive fat in her liver, intermittent high blood pressure and cholesterol problems, as well as insulin resistance, acanthosis nigricans, knee pain and psychosocial complications associated with obesity. In addition, the child's attendance at school was sporadic with numerous unexcused and unexplained absences.

Respondents subsequently consented to the entry of a finding of neglect as well as an order of supervision dated August 4, 2003,[1] which required them to abide by certain enumerated terms and conditions, all of which were designed to facilitate improvement in the child's dietary patterns while at the same time addressing her immediate health and educational needs. After the order had been in force for three months, Family Court conducted a review of the child's condition and, upon finding that there had been little or no improvement in her physical condition, removed the child, with respondents' consent, to foster care in a kinship program where she was placed with her maternal aunt. The child was subsequently returned to her parents' care in April 2004.

Six months later, petitioner filed a petition alleging that respondents had violated a number of the conditions contained in the order of supervision with the result that the child was returned to petitioner's care, where she remained until September 2005.[2] During this time, the child's weight stabilized and actually decreased by 14 pounds to 238 pounds. She was subsequently returned to respondents and, after six months in their care, her weight increased approximately 23 pounds. Thereafter, petitioner commenced this proceeding in March 2006 alleging that respondents, by the quality of care they rendered their child and, in particular, their failure to effectively address her dietary needs and ensure her attendance in school, willfully violated certain conditions contained in the order of supervision and sought removal of the child to petitioner's care.

---

1. The order was extended on June 24, 2004, February 14, 2005, February 7, 2006 and March 8, 2007.

2. The petition was adjourned for six months in contemplation of dismissal.

After hearings were conducted, Family Court found that respondents had, in fact, willfully violated certain conditions contained in the order of supervision and removed the child from their care. It directed that petitioner care for the child pending appropriate placement and extended the term for which the order of supervision was to remain in effect, prompting this appeal.

First, we note that respondents' challenge to the initial finding of neglect entered against them is not properly before us. That finding was entered with their consent and they failed to make a timely application in Family Court to vacate that order (*see Matter of Cheyenne QQ.*, 37 AD3d 977, 978 [2007]; *Matter of Forbus v Stolfi*, 300 AD2d 852, 852 [2002], *appeal and lv dismissed* 99 NY2d 642 [2003]; *see also Matter of Fantasia Y.*, 45 AD3d 1215 [2007]). We do, however, find merit in respondents' claim that petitioner failed to establish at the hearing that they willfully violated any term or condition contained in the order of supervision and, as such, we now reverse.

A finding that a violation of such an order is willful carries with it as a potential penalty a six-month jail sentence (*see* Family Ct Act § 1072 [b]). The specter of such punishment, as well as the potential consequences that such a finding may in fact have for the family unit, requires that competent evidence be presented that establishes the willfulness of the violation by clear and convincing evidence (*see Matter of Elizabeth T.*, 299 AD2d 748, 750-751 [2002], *lv dismissed* 99 NY2d 610 [2003]; *compare Matter of Linda FF.*, 301 AD2d 887, 889 [2003] [this Court found a willful violation based on "ample evidence"]). Applying that standard to the evidence produced in this proceeding leads us to the inescapable conclusion that petitioner has not met its burden of showing that the parents willfully violated any of the terms or conditions as set forth in the order of supervision. Specifically, the petition alleges, and with one exception Family Court found, that the parents violated terms 18, 21, 22, 23, 26 and 27 of the order of supervision. We will address each alleged violation separately.

Term 18 of the order of supervision required that "[r]espondent(s) shall sign all releases of information for themselves and the child requested by [petitioner] in order that [petitioner] may monitor the [r]espondent[s'] progress and attendance in all programs to which they are referred." The petition alleged that this term was violated when the mother refused to provide petitioner with a release for information regarding her emergency room hospitalization for a cardiac episode that occurred in March 2006. Petitioner sought information regarding the

mother's hospitalization because a mental health evaluation had been performed on her as part of her care and treatment, and petitioner contends that this evaluation was relevant in terms of her ability to care for her child. While this information might otherwise be relevant, term 18 only required the production of documents that involved respondents' and the child's "progress and attendance in [any] programs to which they [were] referred." This condition was not intended to provide petitioner with unfettered access to all of respondents' medical records; the mental health evaluation sought by petitioner had nothing to do with this condition, and the mother's refusal to provide this record cannot form the basis of the finding of a willful violation of this particular term of the order of supervision.

Term 21 requires that respondents "cooperate with [petitioner] and all programs to which they are referred." Specifically, it is alleged by petitioner that on four separate occasions occurring over a three-week period, each parent used inappropriate language when speaking with their caseworker either during a telephone call or a home visit. Each resulted in apologies being tendered by the parent shortly after the incident had occurred and none of the incidents, it is alleged, interfered in any meaningful way with the service being rendered or the child's participation in a recommended program. Given the circumstances—six months of direct supervision by petitioner in the care provided their child—some level of frustration, while regrettable, is understandable and does not amount to a demonstration of a deliberate or willful indifference to respondents' obligations under this order (see Matter of Rachel A., 278 AD2d 528 [2000], lv dismissed 96 NY2d 854 [2001]; Matter of Jesse DD., 223 AD2d 929, 930-931 [1996], lv denied 88 NY2d 803 [1996]).

Term 22 of the order required respondents to "use all resources available to ensure the mental, physical and emotional well-being of the child," while term 27 required them to enroll the child, at their own cost, in a local gym and ensure that the child attended the gym at least two to three times each week.[3] Petitioner alleged that the child's attendance at the fitness center selected by respondents during the 31 weeks in question was at best sporadic and did not satisfy their obligations under this order. However, records kept at the fitness center—which were produced during the hearing—establish that the child attended the gym on at least one day per week for 27 of the 31

---

**3.** It appears that Family Court found that these conditions, taken together with the facts presented, constituted a willful violation of the order.

weeks involved. During that period, in addition to attending the fitness center, the child participated in an eight-week swim program, a weekly bowling league, and the Fit Families Exercise-Nutrition program. Respondents, in addition, claim that even though they could not afford the membership fees, their daughter did attend as often as possible and did participate in various programs. The child's attendance, while not perfect, did represent a recognition by respondents of their obligations under the terms of this order and, given the circumstances, constituted a good faith attempt to fulfill them (*see Matter of Marquise EE.*, 257 AD2d 699, 701 [1999]).

Term 23 of the order provides: "Respondent[s] shall take all actions necessary to ensure that [their child] . . . attend school regularly and complete all homework assignments. The [r]espondent[s] shall communicate and cooperate with the [child's] school to ensure the [child] [is] in an appropriate classroom setting. The [r]espondent[s] shall account for all absences or tardies with a note personally provided by [r]espondent[s] to the appropriate school official. Absences of three or more days in succession shall be accounted for by a note from a health care provider personally provided by the [r]espondent[s] to the appropriate school official." Petitioner alleged that the child, from September 14, 2005 through April 6, 2006, missed 18 days and was tardy on 25 separate occasions. However, school officials confirm that each absence during this period was excused, that the majority of them were for appointments involving services, all of which were court ordered, and that, with the exception of absences for medical appointments and family counseling services, the child had a good attendance record for the school year. In addition, not only did respondents contact the school whenever the child was absent to secure her school assignments, but the records reveal that she received passing grades in all of her subjects during this period and that, for at least part of that school year, she qualified for placement on the school honor roll. This evidence is certainly at odds with any claim that respondents engaged in conduct which constituted a "continuous, willful and unjustifiable refusal" to comply with the terms of this order (*Matter of Rachel A.*, 278 AD2d at 529).

Petitioner lastly alleged that respondents violated term 26 of the order which required that they participate with the child in a nutrition program, attend its meetings and utilize the skills and techniques taught in the program to address their child's obesity, as well as her nutritional needs. Petitioner claims that the increase in the child's weight during this period establishes that respondents allowed her to consume foods which were not

appropriate to her dietary needs and her daily caloric intake obviously exceeded acceptable levels. It is true that the child gained weight after being returned to respondents, but other factors outside of their control may well account for this increase. In that regard, it was established that, throughout this period, the child—who undoubtedly has an eating disorder—consumed inappropriate foods at school when she was not subject to respondents' immediate supervision and control. Also, respondents, while caring for the child, maintained food logs in an attempt to accurately chart what foods she consumed, and tests that were conducted in January 2006 as to the child's cholesterol levels and liver functions showed normal or better results as well as significant improvement since April 2005 when the child was in foster care. In addition, respondents routinely traveled more than 130 miles from their home with the child to meet with her nutritionist and to ensure that the child continued to participate in programs provided at the nutrition clinic. While the child did gain weight, it cannot be said that this occurred as a result of respondents' deliberate and willful disregard of their obligations as spelled out by this term of the order of supervision.

While we recognize and share petitioner's concern for the child's health and well-being and are not unmindful of the fact that her weight and dietary habits while in respondents' care had not been, to say the least, ideal,[4] we cannot conclude that petitioner has demonstrated by clear and convincing evidence that respondents exhibited a "continuous, willful and unjustifiable refusal to accept petitioner's recommendation[s]" (*Matter of Rachel A.*, 278 AD2d at 529) or demonstrated an unwillingness to comply with the terms of the order (*see Matter of Linda FF.*, 301 AD2d at 888-890 [2003]). The state of the record constrains us to conclude that Family Court erred by finding that respondents willfully violated the order of supervision.

As a result of our finding, we need not address respondents' remaining arguments.

Cardona, P.J., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed. [*See* 15 Misc 3d 606.]

---

4. In this regard, the Law Guardian's statement in her appellate brief that, during her most recent placement, the child has lost a significant amount of weight is outside the record.