# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1050
CAF 15-01559
PRESENT: CARNI, J.P., DEJOSEPH, NEMOYER, TROUTMAN, AND SCUDDER, JJ.

IN THE MATTER OF MATIGAN G. AND TATUMN G.
------------------------------------------------
ONONDAGA COUNTY DEPARTMENT OF SOCIAL SERVICES,        MEMORANDUM AND ORDER
PETITIONER-RESPONDENT;

SARA E.W.-G., RESPONDENT-APPELLANT.

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (NANCY FARRELL OF
COUNSEL), FOR RESPONDENT-APPELLANT.

ROBERT A. DURR, COUNTY ATTORNEY, SYRACUSE (MAGGIE SEIKALY OF COUNSEL),
FOR PETITIONER-RESPONDENT.

LAURA ESTELA CARDONA, ATTORNEY FOR THE CHILDREN, SYRACUSE.

---

Appeal from an order of the Family Court, Onondaga County (Julie A. Cecile, J.), entered August 11, 2015 in a proceeding pursuant to Family Court Act article 10. The order, among other things, adjudged that respondent neglected the subject children.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: In this proceeding pursuant to Family Court Act article 10, respondent mother appeals from an order finding her in neglect of her two youngest children as the result of her mental illness.

The mother contends that her mental illness was not causally related to any actual or potential harm to the children. We reject that contention. The evidence at the hearing established that the mother exhibited bizarre paranoid delusions during the late hours of January 16, 2015, which continued into the early morning of January 17, 2015 (*see Matter of Thomas B. [Calla B.]*, 139 AD3d 1402, 1403). Specifically, the mother believed she had seen and heard several intruders in her home, and they had intended to kill her (*see Matter of Kiemiyah M. [Cassiah M.]*, 137 AD3d 1279, 1280). The mother was subsequently transported to a psychiatric facility, where she was diagnosed with bipolar II disorder and tested positive for amphetamines, cocaine, and cannabinoids. The mother continued to experience episodes of vivid paranoia after her discharge from the facility, but she refused to seek additional treatment (*see Matter of Jesse DD.*, 223 AD2d 929, 931, *lv denied* 88 NY2d 803).

While there was conflicting testimony whether the subject children were present during the mother's episodes of paranoid delusions, the statements of the mother's two older children describing the harmful emotional impact they experienced as a result of the mother's behavior during her delusions demonstrated the risks faced by the subject children should they be similarly exposed to such behavior.  Furthermore, the evidence established that the subject children had been present during a prior incident in which the mother called the police with a complaint of footprints outside her home, but no such footprints were found by the police.  We therefore conclude that the evidence at the hearing established that "the mother engaged in bizarre and paranoid behavior toward the older child[ren] . . . and that such behavior took place in the presence of the [subject children] at times and thereby exposed [them] to a[n imminent] danger" of their physical, mental or emotional condition becoming impaired (*Thomas B.*, 139 AD3d at 1403 [internal quotation marks omitted]).

Moroever, in our view, a reasonable and prudent parent would have accepted the recommendation to seek additional mental health treatment under these circumstances (*see generally Nicholson v Scoppetta*, 3 NY3d 357, 370).  The record establishes that the mother's older children had been upset by the mother's previous irrational and impulsive behavior, the mother continued to experience episodes of vivid paranoia even after years of treatment with her personal psychiatrist, and she relapsed immediately after she was discharged from the psychiatric facility.  In addition, the mother repeatedly defended the substance of her paranoid episodes during these proceedings by attempting to explain that what she saw and heard was real.  We conclude that the foregoing demonstrates that the mother "displayed a lack of insight into the effect of her illness on her ability to care for the [subject] child[ren]" (*Matter of Lakiyah M. [Shacora M.]*, 136 AD3d 424, 425).

Lastly, although we agree with the mother that the statutory presumption of neglect for repeated misuse of drugs is inapplicable to the facts of this case (*see* Family Ct Act § 1046 [a] [iii]), we nevertheless conclude that Family Court could properly consider evidence that the mother voluntarily possessed and used illegal substances in conjunction with her mental health prescription medication during the episode of paranoid delusions on January 16, 2015 (*see generally Matter of Andrew DeJ. R.*, 30 AD3d 238, 239), and that she subsequently told an investigator that she "believed that other people were administering [drugs] to her so that she would test positive so that she would appear crazy."

Thus, in light of the evidence of the mother's mental illness, and "[g]iven the absence of adequate proof as to the [mother's] willingness to accept medical treatment, or as to the efficacy of whatever treatment might exist," the subject children would be faced with a " 'substantial probability of neglect' " should they be released back to the mother (*Matter of Baby Boy E.*, 187 AD2d 512, 512).  We therefore conclude that the court properly determined that the children were neglected as a result of the mother's mental illness (*see Thomas B.*, 139 AD3d at 1403; *see generally Nicholson*, 3 NY3d at

368).

Entered:  December 23, 2016                    Frances E. Cafarell
                                               Clerk of the Court